# THOMAS ALLEN *et al.*

*v.*

# IRA Y. MUNN *et al.*

1. RIPARIAN OWNERS—*who so considered—of the owners of canal lots in the city of Chicago.* Upon certain land situate in the original town of Chicago, which was granted by the general government to this State and which constituted a part of the canal lands, the canal commissioners laid off certain blocks and lots, some of the lots fronting on the East on Canal street, which was bordered on the side opposite these lots by the Chicago river: *Held,* the owners of lots fronting on that street on the side separated from the river by the street, had no right of private property merely by virtue of such ownership, in land that might lie on the opposite side of the street immediately upon the river bank.

2. Nor is there any act of the legislature giving to such owners an equitable right to acquire title to land lying opposite their lots, between the street and the river, to the exclusion of other persons. The legislation on that subject left it to the discretion of the common council of the city to determine to whom the wharfage lots should be conveyed.

3. LIMITATION ACT OF 1839—*application as to public and private rights.* Where the title and possession of a party in land claimed by him are questioned by an individual, who claims the premises as his own, and the party in possession invokes for his protection the act of 1839, the question can not arise whether the statute would run against the public, on the allegation that the premises in controversy constituted a part of a public highway, because the right against which the statute would be invoked in such case would be a mere private claim.

4. SAME—*of the payment of taxes.* While a defendant can not claim the benefit of the limitation act of 1839, unless he has actually paid the taxes, even though illegally assessed, because not within its spirit, yet if he has paid them for the time required, he can not be denied its protection merely on the ground that the assessment was illegal,—as that the premises were assessed by a wrong description.

WRIT OF ERROR to the Superior Court of Chicago.

The opinion states the case.

Mr. J. S. PAGE, for the plaintiff in error.

Messrs. SCAMMON, McCAGG & FULLER, for the defendants in error.

Mr. CHIEF JUSTICE LAWRENCE delivered the opinion of the Court:

This litigation has arisen upon the following facts :

Lot 1, block 13, in the original town of Chicago, is situated on a quarter section of land granted by the general government to the State, and was a part of the canal lands. In 1837, the canal commissioners surveyed the quarter section into blocks and lots, and duly acknowledged and recorded their plat. All the streets were expressly declared upon the plat to be eighty feet in width. Block 13 fronted on the east upon Canal street, which, at this place, was bordered by the Chicago river, as indicated upon the plat, no line being drawn upon the river side of the street. In fact, however, there was a greater or less space, varying according to the meanderings of the river, between Canal street, with a width of eighty feet, and the river. This space had, in 1835, been laid out by the trustees of the town of Chicago, into water lots, and their plat had been recorded, though by what authority this was done does not appear in this record, and we are not informed. The State itself, however, which owned this property, had, in 1835, given to the trustees the power to lease the wharfing privileges of the town, reserving to the owners of lots fronting on the river the preference.

In 1845, one Isaac Cook bought from the State lot 1, block 13, and received a patent therefor. In 1847, he conveyed to William Allen, the father of the complainants in this record, and. to one Quigly, a part of said lot, by metes and bounds, fronting twenty feet on Canal street. Quigly's interest subsequently passed to Allen.

In 1850, said Isaac Cook conveyed to one Richmond his interest in the land lying between the east line of lot 1 and

the middle of the river, described in the deed as the wharfing privilege.  In 1852, Richmond conveyed to one Chapin, and in 1855, Chapin sold and conveyed the same to the defendant, Munn, for a consideration of $16,000, which was paid.

On the twenty-seventh of February, 1847, the legislature passed an act, reciting that there were various claims to these wharfing privileges, and granting to the common council the power to vacate so much of certain streets bordering on the river, as might lie outside the width of eighty feet, to adjust all disputes between the city and others in regard to the wharfing privileges, and to make such agreements and conveyances as they might think proper, reserving, however, the rights of the State and the canal trustees.  On the eleventh of February, 1853, the legislature passed another act of the same general purport, but giving the city the power to make conveyances of the wharfing privileges to such persons as it might think entitled to the same, without any reservation of rights to the State or the canal trustees.  On the tenth of December, 1855, the common council passed an ordinance, providing for the vacating of so much of the street as bordered the river outside the width of eighty feet, upon being paid or secured certain sums assessed upon each lot.  The sum assessed upon lot 1, in block 13, was $3252, of which the sum of $821 would belong to the twenty feet, above mentioned, as conveyed to Allen. The ordinance does not, in terms, provide for a conveyance by the city, upon being paid or secured the assessments, but it is claimed by counsel that such was the purpose, and we presume this claim is correct.

On the eleventh of July, 1857, the city conveyed to Munn, whose claim to the lot we have already stated, whatever title it had, or could convey, in said wharfage lot, by virtue of the acts of the legislature.  Munn secured to the city the $3252 assessed upon lot 1, and afterwards paid that sum.

William Allen, in the meantime, had died, leaving, as his sole heirs, his two sons, Thomas and Richard Allen, the complainants herein, both minors.  In 1856, their guardians sought

to procure from the city a deed for the wharfage lot opposite the twenty feet, but it was never executed. The matter rested until 1864, when, both heirs having become of age, they presented to the common council a petition for a conveyance, offering to comply with all the requirements of the ordinance. This petition was finally denied in 1867, and the next year they filed their bill in this case, praying a conveyance from Munn and the city.

Munn answered, setting up his title as herein stated, and also possession and payment of taxes for seven successive years under color of title. The cause came on to a hearing, and the circuit court dismissed the bill.

The case is not free from perplexing features, but, after much consideration, we have concluded the decree is correct. The father of complainants, by his purchase of a portion of lot 1, in block 13, acquired a right to have the street kept open to the width of eighty feet, and that has been done. Whether he acquired a right to have it kept open as a street to the river, since the plat showed no boundary line on the river side, except the river itself, is a question not presented by this record, and as to which we express no opinion. The object of this proceeding is not to have the street kept open upon the river side, but to secure a piece of land upon the river margin as the private property of complainants.

Upon what does this claim rest? If we are referred to the purchase and ownership of a piece of ground on the west side of the street, the obvious reply is, no matter what the complainants may own upon that side of the street, such ownership can give no right of private property on the other side. If half the bed of the river were to become dry land, the complainants would acquire no right of private property therein, merely by virtue of owning the lots upon the other side of the streets. This very question was decided by the Supreme Court of the United States, in the case of *Banks* v. *Ogden*, 2 Wallace, 57. If the wharfage lots in question were

not a part of the street, they belonged to the State until granted away by her, or under her authority, the State having received the title by grant from the general government.

If the complainants can claim the aid of the court upon any ground, it must be because the acts of the legislature, and the ordinance of the city council, above quoted, have given them an equitable right to acquire the title to these wharfage lots, and this is, indeed, the point upon which the counsel of plaintiffs in error seems to rely. But the acts of the legislature recognize no claim of any character on the part of the owners of lots on the opposite side of the street. They give them no preference or right of pre-emption. They leave it to the discretion of the common council to determine to whom, and upon what terms, the property shall be conveyed.

But it is claimed, the common council, by the ordinance of December 10, 1855, exercised that discretion in favor of the owners of the opposite lots. We are not prepared to say, and it is not necessary to decide, what equities, under the peculiar language of the ordinance, these complainants might have had against the city, or against Munn, as a purchaser from the city with notice, if their bill had been filed in time. But Munn, by his deed from Chapin, made in 1855; by his deed from the city in 1857, and by a deed from one Mueller in 1856, conveying a title derived by virtue of a sale by the city upon a special assessment in 1853, had certainly color of title. The proof shows, that he has been in actual possession since 1855; that in 1855 and 1856, he erected a warehouse upon the premises at a cost of $50,000, and that he has paid all taxes assessed upon the premises from 1856 to 1867, the year previous to the commencement of the suit, inclusive. The younger of the two complainants had attained his majority more than three years before the bill was filed, and, therefore, neither of them is within the saving clause of the statute of limitations.

The only reply made by complainants' counsel to this defense is, that the premises were a part of the street, and that the

statute, therefore, would not run; and secondly, that the description of the lot for taxation was lot 1, in block K, being the designation given to the premises in the plat made by the town trustees in 1835, already mentioned.

As to the first point, the answer is, that after actual possession taken by Munn, and the deed of the city to him in 1857, the premises ceased to be a part of the street, if, indeed, they were ever properly so. The question is not, whether the possession thus taken and the payment of taxes would be a sufficient bar against the public claiming a street, if the premises had ever legally been a street, but whether it is sufficient as against these complainants, when they are insisting upon merely a private right of property. The question of public right, and the maxim *nullum tempus,* etc., quoted by counsel, are here entirely irrelevant, because the right against which the benefit of the statute is invoked is not a public right, but a mere private claim. The complainants are asking that the title and possession of Munn shall be transferred to them, to be held as their private property. That Munn can claim the protection of the statute when a court of equity is asked to enforce such a demand, if he can show himself within its terms, seems too clear for argument.

The second objection taken by counsel to the defense of the statute, is equally untenable. The lot in question was taxed every year, like other property, and by a description perfectly definite, and appearing upon a recorded plat of this portion of the city made by the town authorities. Whether the city could legally tax it by that description, it is not necessary to consider, for we held, in *Elston* v. *Kennicott,* 46 Ill. 205, after very mature deliberation, that while a defendant can not claim the benefit of the statute, unless he has actually paid the taxes, even though illegally assessed, because not within its spirit, yet if he has paid them for the time required, he can not be denied its protection merely on the ground that the assessment was illegal. In such a case, the defendant would be both within the letter and spirit of the statute.

Without deciding whether the complainants ever had such equities as a court would enforce, we are of opinion that the defendant, Munn, has a right to shield himself under the statute of limitations.

*Decree affirmed.*