(No. 43180.—

FRANK CEBULSKI, Appellant, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(E. B. RODIN, Appellee.)

*Opinion filed April 1, 1971.—Modified on denial of rehearing May 26, 1971.*

JACK L. SACHS, of Chicago, for appellant.

KANE, DOY & HARRINGTON, of Chicago, (ARTHUR O. KANE, of counsel,) for appellee.

Mr. JUSTICE KLUCZYNSKI delivered the opinion of the court:

In July, 1968, petitioner, Frank Cebulski, an employee of E. B. Rodin, filed an application for adjustment of claim with the Industrial Commission to recover for injuries allegedly sustained as a result of an accident arising out of and in the course of his employment. The arbitrator found that the petitioner failed to prove that he sustained any permanent disability which was compensable as provided by statute. The decision was affirmed by the Industrial Commission and confirmed by the circuit court of Cook County. This direct appeal followed. The primary issue before this court is whether the decision of the Industrial Commission is against the manifest weight of the evidence.

At the time of the injury involved here petitioner was

employed by respondent as a janitor. His duties were to carry down refuse from the various floors and apartments, take care of the boilers, remove clinkers, burn refuse, clean halls and stairways, vacuum the carpets, do repairs as needed and shovel coal onto conveyors and into the boiler hoppers. According to petitioner, on Friday, April 13, 1968, he was taking refuse down from different floors of respondent's building. A refuse can located on the third floor was filled with books and magazines and weighed, petitioner estimated, 150 pounds. He carried this can filled with books and magazines from the third floor to the boiler room in the basement. Immediately after carrying the can down he experienced sharp and severe pain in his chest which caused him to stop working and go into the house to rest for about an hour. After resting, he completed his day's work but he noticed that whenever he exerted himself, he felt the pain and he became easily tired.

On Saturday and Sunday he experienced the same pains and fatigue upon any exertion. It was necessary for his son to assist him with these chores on these days. On Monday, April 15, still experiencing the pain, he consulted Dr. Donald Atlas, who examined him, and had him admitted to Weiss Memorial Hospital immediately. He remained in the hospital for five weeks, the first two being in the heart unit at Weiss Hospital and the remainder under general care. When he left the hospital he was given nitroglycerin to carry with him and to take whenever he felt any pain in his chest. After leaving the hospital, Cebulski remained home.

Petitioner testified that since the heart attack he has had to take it easy, that he can't rush up stairs and that he must stop on the landings. He stated that he has done no janitorial work since April 13, 1968, and that he has done no repair work of any kind. In addition he testified that he never had any pains in his chest prior to the date in question.

Dr. Donald Atlas, called as a witness by petitioner, testified that he saw Celbulski on April 15, 1968. Cebulski

told him that he had had several episodes of severe substernal pain within the past 24 to 48 hours. After examining Cebulski he admitted him to the hospital in the intensive care unit.

Dr. Atlas further testified that he had treated petitioner on prior occasions and that in October, 1967, he diagnosed a condition of albuminuria and high blood pressure, and he advised petitioner to avoid strenuous activity. However, according to the doctor, Cebulski responded to treatment and was able to walk up three flights of stairs without difficulty. Subsequent examinations also indicated that petitioner had some coronary insufficiency. He testified that on April 15, 1968, the electrocardiogram showed changes in the previous condition and indicated that petitioner was developing a myocardial infarction. The doctor concluded that petitioner was not capable of doing physical work but was capable of doing a moderate amount of clerical work. On cross-examination, Dr. Atlas stated that petitioner could be gainfully employed on a part-time basis as long as it would not require physical exertion and mental and emotional stress.

In August, 1968, Cebulski purchased a currency exchange and commenced operation of it during the first week of September 1968. He was the president of the corporation operating the exchange and his wife was secretary-treasurer. A question arose as to whether the currency exchange was a source of income to petitioner and whether he was employed there. Petitioner stated that his wife ran the business from 9:00 A.M. to 6:00 P.M., six days a week, but that he and his son helped out when she got busy or when she had to take a break, and that he usually spent from 3:00 to 6:00 o'clock in the afternoon at the business. He stated that he was familiar with the way a currency exchange operates and that he instructed his wife in the work. The business had gross receipts of $300 a week, but petitioner stated that he did not know what the net profit was.

Mrs. Cebulski, petitioner's wife, drew a salary of $100 a week, but petitioner received no compensation from the business. On cross-examination petitioner stated that during this period he did the chores around the apartment, drove the children to school, took care of various other details and worked part-time in the currency exchange taking care of it when she would go out for any reason and if they were busy he would open a second window and take care of the customers.

E. B. Rodin, petitioner's employer, testified that some time between September 10 and September 15, 1968, petitioner telephoned him and asked if he knew where he could get a girl to work in the currency exchange for a couple of weeks until the case was over or settled. Petitioner later called him and told him that he would have to put his wife into the currency exchange because he couldn't get a girl at that time. However, petitioner denied that these conversations took place.

Sophie Rodin, sister-in-law of the respondent, testified that she owned the Jubilee Card and Gift Shop; that Mrs. Cebulski worked in the shop for seven years until September 1968; that she did not work during September, October, November and December of 1968, and that she returned to work in January, 1969, and was at that time presently working at the shop.

Petitioner contends that the evidence substantiates his claim that he suffered permanent total disability and is entitled to compensation. It has long been held that an employee is totally and permanently disabled "when he is unable to make some contribution to industry sufficient to justify payment to him of wages." (*Ford Motor Co.* v. *Industrial Com.*, 355 Ill. 490, 494.) Here the Commission found that the petitioner had not sustained the burden of showing that he was incapable of earning an income. Petitioner cites *Universal Bleacher Company Service Co.* v. *Industrial Com.*, 43 Ill.2d 168, for the proposition that starting

a business does not necessarily bar recovery for total and permanent injury. There the Commission awarded compensation to the petitioner for total disability. However, the petitioner had "purchased a few cars, had them parked in his yard, advertised them for sale in a newspaper, and sold them over a period of four or five months at a profit of $600 or $700." The court found: "These small earnings, realized from 'arm chair' sales where some considerable investment was a factor, have little bearing on his ability to work." (43 Ill.2d at 169.) From the testimony of petitioner in the instant case, the Industrial Commission could reasonably infer that he was active in the operation of a full-time business. A going currency exchange requires a much greater labor commitment and is much less an investment than the "arm chair" sales involved in *Universal.*

In addition, the testimony of Dr. Atlas indicated that, while petitioner's condition was serious, he was capable of certain part-time employment. The fact that net profits were not ascertainable does not necessarily negate the inference that petitioner was active in the business and should have been compensated for it. The petitioner did not offer additional evidence before the Commission as to who was working at the currency exchange at the time of the hearing.

The primary responsibility for judging the credibility of witnesses and drawing reasonable inferences from the evidence lies with the Industrial Commission, and its decision will not be set aside unless it is contrary to the manifest weight of the evidence or without substantial foundation in fact. (*Northwestern Steel & Wire Co.* v. *Industrial Com.,* 38 Ill.2d 441.) From a review of the entire record, we cannot say that the decision of the Industrial Commission finding that petitioner has failed to prove that he was not capable of earning income is against the manifest weight of the evidence.

Finally, petitioner argues that he is entitled to recover

medical and hospital bills incurred as a result of the accident. Appellees contend that because these bills were never received into evidence, no award could be made for them. However, petitioner did move to have them received into evidence, but the arbitrator on three occasions reserved his ruling. We feel that there should have been a ruling on this question and on the question of the applicability of section 8(j) of the Workmen's Compensation Act. Ill. Rev. Stat. 1969, ch. 48, par. 138.8(j).

For the foregoing reasons the judgment of the circuit court is affirmed in part and the cause is remanded to the Industrial Commission for further proceedings consistent with the views expressed herein.

*Affirmed in part and remanded, with directions.*