(No. 43599.—

SOUTH IMPORT MOTORS, INC., Appellant, v. THE INDUSTRIAL COMMISSION *et al.*—(William F. Schumann, Appellee.)

*Opinion filed October 2, 1972.*

VAN DUZER, GERSHON, JORDAN & PETERSEN, of Chicago (JOHN B. VAN DUZER and HORACE W. JORDAN, of counsel), for appellant.

J. MICHAEL MADDA, of Chicago (JAMES F. GORMAN and SIDNEY Z. KARASIK, of counsel), for appellee.

MR. JUSTICE SCHAEFER delivered the opinion of the court:

An arbitrator for the Industrial Commission awarded the claimant, William F. Schumann, compensation for permanent, total disability which resulted from an accident that arose out of and in the course of his employment by the respondent, South Import Motors, Inc. The Commission confirmed the award after hearing additional testimony, and the circuit court of Cook County affirmed the decision of the Commission. The respondent has appealed.

It is undisputed that on August 31, 1966, the claimant was injured in an automobile accident and that the accident and any disability caused by it arose out of and in the course of the claimant's employment by the respondent. It is also admitted that the claimant suffered a skull fracture, a rib fracture and a foot fracture as a result of the accident. The sole issue in this court is whether the claimant suffered permanent total disability as a result of the accident.

The claimant was employed by the respondent as an automobile mechanic prior to the accident. Since the accident he has not returned to work nor has he attempted to find any other employment. He testified that since the accident he has suffered from frequent spells of dizziness and tires easily. The only manual labor he has done has been to help his wife with light housework such as washing dishes when she directed him to do so. He stated that he was never left alone and that either his wife or son stayed at home with him. Mrs. Schumann testified that either she or her son had to stay at home with the claimant to take care of him and that he could not dress or bathe himself.

Dr. Eugene Blonsky, a specialist in neurology and psychiatry, testified before the arbitrator. He had treated the claimant at Chicago Wesley Memorial Hospital, where the claimant had been sent by the respondent when he had complained of memory loss after the accident. Dr. Blonsky also treated the claimant at his office after he left the hospital. He testified that on the basis of a complete neurological examination, which included among other tests a "brain scan" and psychological testing, the claimant suffered from "a chronic brain syndrome with memory loss, confusion and perhaps early dementia, resulting from injury to the left temporal region of the skull and underlying brain." He concluded that this disability was related to the accident and that it was permanent in nature. In response to a hypothetical question incorporating the facts in evidence, he stated that if the claimant was employable he could only do work under very close supervision which did not require any memory of details, routine or prior learning.

Dr. Daniel Ruge, a neurosurgeon, was called as a witness before the arbitrator by the respondent. He had conducted a neurological examination of the claimant and concluded that there was "very little" in the way of abnormal neurological findings. There were some physical-neurological findings relative to the left portion of the

defendant's skull, however, which the doctor could not explain. He had not performed many of the tests which Dr. Blonsky had performed, including the "brain scan" upon which Dr. Blonsky had in part based his conclusions. Apparently Dr. Ruge had not conducted any tests to determine the claimant's mental abilities although he had concluded that the claimant's "mentation" was below par at the time of his examination. No questions were asked of Dr. Ruge which related to whether the claimant had suffered an impairment of memory or whether he was mentally capable of being gainfully employed.

The respondent called Dr. Leo Markin, an orthopedic surgeon, as a witness before the Commission on review. Dr. Markin had examined the claimant and concluded that the fractures of the plaintiff's rib and foot had properly healed. He also testified that the fracture to the left portion of the claimant's skull had healed although there was an irregularity of the bone beneath it. He concluded that there was no "neurological lack" in the claimant. He testified, however, that he had not conducted all of the tests of the claimant that a neurologist would have performed. He stated that the claimant could be gainfully employed because all of his bodily functions were normal, and that the claimant would not require close supervision in a job because he had followed the doctor's directions during the examination. However, he indicated that he had no basis for any conclusion as to whether the claimant had suffered any loss of ability to remember.

An employee is totally and permanently disabled for the purpose of workmen's compensation benefits "when he is unable to make some contribution to industry sufficient to justify payment to him of wages." (*Cebulski v. Industrial Com. (1971), 48 Ill.2d 289, 293, quoting Ford Motor Co. v. Industrial Com. (1934), 355 Ill. 490, 494.*) But this does not mean that the employee must be reduced to a state of total physical or mental incapacity or helplessness before he can be said to be totally and

permanently disabled. (See, *e.g.*, *Universal Bleacher Company Service Co. v. Industrial Com. (1969), 43 Ill.2d 168; Electro-Motive Div., General Motors Corp. v. Industrial Com. (1964), 32 Ill.2d 35.*) A person is totally disabled when he cannot perform any services except those which are so limited in quantity, dependability, or quality that there is no reasonably stable market for them. (Larson, Workmen's Compensation Law, sec. 57.1.) It is also well established that an employee may be rendered totally and permanently disabled for the purpose of determining workmen's compensation benefits by a mental disorder as well as by a physical one. *Thomas J. Douglass & Co. v. Industrial Com. (1966), 35 Ill.2d 100, 104.*

Whether a claimant is permanently disabled is a question of fact and the finding of the Commission on this issue should not be set aside unless it is contrary to the manifest weight of the evidence. (*Cebulski v. Industrial Com. (1971), 48 Ill.2d 289, 294.*) Even if the Commission was confronted with truly conflicting medical opinions on this issue, the Commission's determination would be upheld unless it was contrary to the manifest weight of the evidence. (*Electro-Motive Div., General Motors Corp. v. Industrial Com. (1964), 32 Ill.2d 35.*) In this case there was no true conflict in the medical testimony. Dr. Blonsky was the only doctor who had conducted any tests to determine whether the claimant's mental process had been impaired by the accident and he concluded that the claimant was incapable of performing any work except simple tasks under close supervision. Dr. Ruge indicated that he had not performed any tests on the claimant which would allow him to make a conclusion as to the claimant's mental abilities and he offered no opinion as to whether the claimant was employable. Dr. Markin testified that the claimant was employable, but he had not attempted to give the claimant a complete neurological examination, and he testified that he had no basis for making a conclusion as to whether the claimant's memory had been

impaired by the accident. The claimant and his wife testified to his inability to work after the accident because his mental ability was impaired. On cross-examination the claimant acknowledged that a Dr. Baya, who was a doctor employed by the respondent, might have told him that he could try to work. The respondent, however, did not call Dr. Baya as a witness or attempt to show whether he had in fact concluded that the claimant could be employed and, if so, the basis for any such conclusion.

On this record the decision of the Commission that the claimant had been totally and permanently disabled due to the accident was not contrary to the manifest weight of the evidence, and the judgment of the circuit court affirming that decision is affirmed.

*Judgment affirmed.*