(No. 49097.

C. R. WIKEL, INC., *et al.,* Appellants, v. THE INDUS-TRIAL COMMISSION *et al.*—(William May, Appel-lee.)

*Opinion filed November 30, 1977.*

Klohr, Braun, Lynch & Smith, of Chicago (Mark A. Braun, of counsel), for appellants.

David Levinson, Jr., of Brill & Levinson, of Chicago, for appellee.

MR. JUSTICE MORAN delivered the opinion of the court:

Based on the finding that the claimant, William May, had become totally and permanently disabled as a result of an injury which arose out of and in the course of his employment, an arbitrator awarded the claimant complete disability benefits pursuant to paragraph (f) of section 8 of the Workmen's Compensation Act, as amended (Ill. Rev. Stat. 1975, ch. 48, par. 138.8(f)). The claimant was entitled to the sum of $61 per week for a period of 295 weeks and one week at $5, and, thereafter, to a pension

for life in the sum of $2,160 per year payable in 12 equal monthly installments of $180 each.

After the submission of additional medical evidence, the Industrial Commission sustained the decision of the arbitrator. Upon review, the circuit court of Lake County confirmed. Subsequently, the circuit court denied the employer's motion to reconsider. The employer, C. R. Wikel, Inc. (Wikel), now appeals, claiming solely that the award for total and permanent disability is contrary to the manifest weight of the evidence.

In 1961, the claimant sustained an injury to his left eye in an industrial accident and was awarded disability compensation based on an 87% loss of the use of that eye. The claimant testified that the condition of his left eye had neither improved nor deteriorated since that time. In 1967, he began work for Wikel. On December 20, 1971, in the course of his work for that firm, the claimant slipped and fell while carrying a sheet of plywood. The following day, the claimant mentioned to his foreman that his back hurt, but he continued working. The pain persisted and, on December 29, the claimant consulted his doctor, who gave him an infrared-light treatment and pills for the relief of pain. The claimant remained off work for the next week and one half. He then consulted the workmen's compensation doctor, who referred him to Dr. Henry W. Apfelbach, an orthopedist. On January 27, 1972, the claimant entered the hospital where he underwent a laminectomy the following week.

A few months after the surgery, the claimant twisted his back, further aggravating the injury. After examining the claimant on July 11, 1972, Dr. Apfelbach estimated that his condition included 30% disability of his left leg. In his medical examination report, the orthopedist failed to respond to the request for his opinion as to whether or not the claimant was totally and permanently disabled, but noted:

"Patient would be able to work if his problem were only orthopaedic. He has a very serious eye problem, with apparent blindness in one eye and considerable restriction in the other. It is his eyesight which prevents him from returning to work. Please seek the opinion of his ophthalmologist regarding this disability and his ability to return to work."

The claimant returned to Wikel shortly thereafter seeking carpentry work which would not aggravate his back. He testified that he was informed that only "physical construction" work was available and that he would not "be useable." The claimant sought work at Wikel again approximately one month later, but, by then, the company had been dissolved. In September of 1973, the claimant developed considerable swelling and pain in his right knee and was admitted to another hospital for 11 days. The hospital's admitting report stated:

"This 55 year old patient had been noticing an aching pain in his right knee for at least three weeks. He stated that he thought it was due to the fact that he had back surgery and that he had been favoring the left leg following surgery and putting more strain on the right knee."

The hospital's discharge statement indicates that the claimant had sustained an internal derangement of the knee, possibly related to the back injury.

The claimant has not applied for employment since the two visits to Wikel, and he testified that, due to the pain in his legs and back, he is able to do only limited maintenance work around the house.

Based on these facts, the arbitrator found that the claimant was totally and permanently disabled. When the case came before the Industrial Commission, Wikel submitted two doctors' reports which volunteered the medical opinion that the claimant was gainfully employable. Dr. Apfelbach, the claimant's examining orthopedic surgeon, after reexamining the claimant's lower back and lower

extremities on January 27, 1975, concluded:

"We feel that this patient has obtained a satisfactory result following his laminectomy of February 4, 1972. We feel that there are many types of work which this patient is capable of performing. His orthopaedic status is such that he could engage in any type of work which would not require prolonged standing or lifting greater than 20 pounds. This then would include all types of semi-sedentary occupations, for example, assembly work."

Dr. Burton A. Russman, an ophthalmologist, examined the claimant on May 26, 1975, and diagnosed that the condition of his left eye would not improve. He concluded:

"Regarding this individual's complete disability, I see no reason why he could not be gainfully employed in any field which does not require binocular vision. The acute binocular vision necessary for a fine carpenter would not be available to him, but some other type of employment should certainly be suitable for him."

With this additional medical evidence before it, the Industrial Commission sustained the finding that the claimant was totally and permanently disabled. The determination of disputed questions of fact, including how much weight should be afforded the views of medical experts, is primarily the function of the Industrial Commission. On judicial review, its findings will not be disturbed merely because this court might have arrived at a contrary conclusion.

Wikel contends that there is no credible evidence linking the claimant's injury of his right leg (treated in September of 1973) to the industrial injury which plagued his lower back and left leg. However, both the admitting report and the discharge statement of the second hospital raised the reasonable inference that the strain placed on the right leg related to the earlier industrial back injury. Wikel offered no evidence to rebut the inference.

Wikel's primary contention is that no evidence was

offered to show that the combination of disabilities—vision impairment, back pain and leg pain—prevented the claimant from being gainfully employable.

An employee is totally and permanently disabled for the purpose of workmen's compensation benefits " 'when he is unable to make some contribution to industry sufficient to justify payment to him of wages.' " (*Cebulski v. Industrial Com.* (1971), 48 Ill. 2d 289, 293, quoting *Ford Motor Co. v. Industrial Com.* (1934), 355 Ill. 490, 494.) This does not mean that the employee must be reduced to a state of total physical incapacity or helplessness. A person is totally disabled when he cannot perform any services except those which are so limited in quantity, dependability, or quality that there is no reasonably stable market for them. *Interlake Steel Corp. v. Industrial Com.* (1975), 60 Ill. 2d 255, 259; *South Import Motors, Inc. v. Industrial Com.* (1972), 52 Ill. 2d 485, 488-89.

Wikel concedes that, by employing a person with severely impaired vision, it accepts the risk that such an impairment may compound the employee's inability to work if the employee sustains an unrelated, disabling injury on the job. (See *American Rivet Co. v. Industrial Com.* (1966), 34 Ill. 2d 69, 72.) However, Wikel relies on the uncontradicted medical opinions of the orthopedic specialist and the ophthalmologist that the claimant is capable of at least some type of limited employment.

The expert opinions of the two doctors are susceptible of an equally persuasive interpretation to the contrary. Dr. Apfelbach seemed to indicate that if the claimant had no other physical infirmity, his back ailment alone would restrict future employment to those jobs which would not require prolonged standing or lifting more than 20 pounds. Dr. Russman, commenting only as an ophthalmologist, concluded that the claimant's eyesight alone would preclude him from being gainfully employed in any field which requires binocular vision. A synthesis of the two

expert opinions reveals that the claimant was incapable of doing heavy labor because of his back ailment, and incapable of doing precision work because of the impairment of his vision. Dr. Apfelbach suggested assembly work as employment which would not aggravate the claimant's orthopedic condition. The claimant testified, however, that he had indeed done assembly work but, in 1961, had had to give it up as a result of his vision impairment.

This court need not conclude that the Industrial Commission in fact interpreted the medical opinions in precisely this manner. If the record permits the conclusion that conflicting inferences may be drawn, this court will not disturb the conclusions reached by the Industrial Commission. *Chicago Transit Authority v. Industrial Com.* (1975), 61 Ill. 2d 78, 83; *Morgan Cab Co. v. Industrial Com.* (1975), 60 Ill. 2d 92, 97.

Accordingly, we are of the opinion that there was sufficient credible evidence for the Industrial Commission to conclude that the claimant's severely limited physical capabilities, established by the evidence and not belied by the two medical opinions, prevented him from being gainfully employed in any reasonably stable market for which he was qualified. (*Interlake Steel Corp. v. Industrial Com.* (1975), 60 Ill. 2d 255, 259.) Therefore, the finding of the Industrial Commission that the claimant was totally and permanently disabled is not contrary to the manifest weight of the evidence.

The judgment of the circuit court of Lake County is affirmed.

*Judgment affirmed.*