(No. 48923.—

E. R. MOORE CO., Appellee, v. THE INDUSTRIAL COMMISSION *et al.*—(Elizabeth Applehans, Appellant.)

*Opinion filed April 3, 1978.—Rehearing denied May 26, 1978.*

354

RYAN and UNDERWOOD, JJ., dissenting.

E. Anne Mazur, of Chicago (Sidney Z. Karasik, of counsel), for appellant.

Dowd, Dowd & Dowd, Ltd., of Chicago (Joseph V. Dowd and Philip J. McGuire, of counsel), for appellee.

MR. JUSTICE MORAN delivered the opinion of the court:

Claimant, Elizabeth Applehans, appeals the Cook County circuit court judgment which reversed the Industrial Commission's order awarding total permanent disability compensation to claimant for injuries sustained in a work-connected accident.

Respondent, E. R. Moore Company, rents caps and gowns for use on ceremonial occasions. The garments, after being used, are returned to the plant for dry cleaning. Claimant, a 58-year-old woman, was employed by respondent as a garment presser. On June 8, 1972, a washing machine filled with perchloroethylene, a dry-cleaning solution, overflowed, splashing the solution upon claimant's feet and legs. A week later, a rash appeared on claimant's feet and legs. She continued to work although the dermatitis progressed, the rash spreading to her arms and other parts of her body. She did not seek medical attention for this condition until October 28, 1972. She had, however, informed her employer of the rash prior to her consultation with a physician.

Dr. Lenin Pellegrino, claimant's treating physician, prescribed medication and instructed her to stay home until the condition cleared. On January 3, 1973, claimant returned to work, but the rash reappeared, this time covering her entire body. Dr. Pellegrino again prescribed medication. Claimant requested workmen's compensation forms from her employer, but her employer first referred her to another physician, Dr. Gilbert. Dr. Gilbert administered an injection, prescribed a different type of medication, and instructed claimant to return to work. Claimant

remained under Dr. Gilbert's care for a month and a half, during which time she made several attempts to resume working. On each occasion, however, she experienced renewed discomfort. She was ultimately referred to another physician, Dr. Silas Wallk, who had her placed in a hospital. While at the hospital, claimant was given salves for her skin and instructed to take "oatmeal" baths twice a day. (As of the date of the arbitration hearing, claimant was continuing to take the "oatmeal" baths prescribed.) After her release by Dr. Wallk, claimant did not return to work.

At the arbitration hearing, claimant testified she had worked off and on for 15 years at various jobs which she described as housework. These jobs required her to use soaps and cleaning fluids. Immediately prior to her employment with the respondent, claimant worked as a maid in a hotel. Since the accident, her husband and her daughters have cleaned the 'floors and done the laundry. Whenever claimant is exposed to bleaches or detergents her hands are "inclined to itch a little."

On cross-examination, claimant noted that as long as she has avoided contact with the irritant which caused her problem, her rash and itching have disappeared. On redirect, however, claimant reemphasized the fact that she has avoided contact with all cleaning detergents since her accident at work. She also stated that, after being released by Dr. Wallk, she visited Dr. Pellegrino twice for checkups, and he advised her not to return to work.

Dr. Pellegrino testified that he had treated claimant for a skin condition commonly known as contact dermatitis. Although the initial treatment resulted in a marked improvement, the condition flared up again on claimant's return to work. Dr. Pellegrino explained that contact with a solvent like perchloroethylene removes the body oils from the skin and each exposure decreases the skin's resistance to other less toxic irritants. He stated that

claimant should avoid working at any job that would involve the use of solutions, such as detergents and cleaning solvents, that contain active chemical agents, for she runs the risk of reactivating the dermatitis.

On cross-examination, Dr. Pellegrino noted that, even though the objective manifestation of the dermatitis may disappear, claimant's susceptibility will remain. Considering her age and her sensititivy to active chemical agents, Dr. Pellegrino suggested that there were very few jobs that claimant could perform without risking her health.

The medical reports of Dr. Pellegrino and Dr. Wallk were introduced into evidence by respondent. Dr. Wallk's report indicated that the claimant had suffered from a case of general dermatitis and should remain cured as long as she avoids returning to her former employment. Based on the evidence submitted, the arbitrator awarded claimant total and permanent disability compensation.

On review before the Commission, the respondent introduced into evidence the testimony of Dr. Samuel M. Bluefarb, a dermatologist. Dr. Bluefarb testified that his examination of the claimant revealed no active dermatitis, but only a slight increase in the pigmentation around her ankles and some scaling of the skin of the forearms. He noted that the scaling of the forearms could be caused by a number of factors, such as age, winter weather, or too much soap. He described perchloroethylene as a primary irritant and stated that an individual would develop contact dermatitis if exposed to it. As long as the sensitized person thereafter avoided the offending substance, Dr. Bluefarb stated that, generally speaking, the dermatitis should clear and the individual should experience no further difficulty.

On cross-examination, Dr. Bluefarb stated that he did not know the severity of claimant's initial dermatitis nor the number of times she had been exposed. He stated that

damage to the skin as a result of reexposure would vary from person to person, and that the skin would not necessarily become more vulnerable to other irritants. Although a primary irritant removes the oils from the skin and makes it susceptible to other chemical solvents, Dr. Bluefarb opined that in time the oil should return. He noted, however, that if the skin was permanently damaged it would have less resistance to substances such as soaps and detergents.

Respondent then called claimant as its witness. Claimant testified that since leaving respondent's employ she had submitted applications at two factories and had continued to look for employment. Under questioning by her own counsel, claimant stated that the two prospective employers had asked only about her age, and she had not been called back for work. She did not know if the work she applied for involved the use of solvents like perchloroethylene.

The Commission affirmed the arbitrator's award.

On review before the circuit court, the respondent argued that the claimant failed to prove she was unable to work. Respondent pointed out that there was no testimony to indicate that claimant's inability to find work was attributable to her disability. The circuit court reversed and remanded the cause for the taking of further evidence concerning claimant's inability to work. Claimant, however, filed a motion to vacate the remandment order, and, following a hearing at which claimant's counsel stated that no further evidence could be produced, the circuit court vacated its remandment order and reversed the Commission's award of total and permanent disability.

On appeal, claimant contends that the evidence was sufficient to sustain the Commission's finding of total and permanent disability. She argues that, considering the nature of her disability, her age, and her limited work experience, the Commission properly concluded that there

is no reasonably stable market for her services. Conversely, the respondent contends that because claimant·will remain healthy as long as she avoids contact with various irritants, she cannot be considered totally and permanently disabled for the purposes of section 8(f) of the Workmen's Compensation Act (Ill. Rev. Stat. 1975, ch. 48, par. 138.8(f)). The respondent also argues that the Commission's award is against the manifest weight of the evidence because there is no evidence that claimant is unable to work or that her disability has prevented her from obtaining suitable employment.

An employee does not have to be reduced to a state of total physical and mental incapacity or helplessness before total and permanent disability compensation can be awarded. (*C. R. Wikel, Inc. v. Industrial Com.* (1977), 69 Ill. 2d 273, 278; *South Import Motors, Inc. v. Industrial Com.* (1972), 52 Ill. 2d 485, 488-89.) Although an employee seeking such compensation must prove that he has sustained a permanent medical disability as a result of a work-related accident (except with respect to awards pursuant to section 8(e)(18) (Ill. Rev. Stat. 1975, ch. 48, par. 138.8(e)(18)) (*Scandroli Construction Co. v. Industrial Com.* (1973), 54 Ill. 2d 395, 399)), the award of compensation is not for the disability as such, but for the impaired earning capacity which results from the disability (*Board of Education v. Industrial Com.* (1972), 53 Ill. 2d 167, 171; *Consolidated Coal Co. v. Industrial Com.* (1924), 314 Ill. 526, 528).

Admittedly, the claimant is not presently experiencing pain or discomfort, nor is she likely to do so in the future as long as she avoids contact with various irritants. Medical testimony, however, indicates that the claimant is suffering from a medical disability—a sensitization to active chemical agents such as those found in common detergents and cleaning solvents—and that the disability was precipitated by her on-the-job exposure to perchloroethylene. In Dr.

Pellegrino's opinion, her susceptibility is a permanent condition. Dr. Pellegrino's prognosis is supported, in many respects, by Dr. Bluefarb's testimony. Although Dr. Bluefarb stated that claimant's dermatitis was not presently active, he noted that her susceptibility to other chemical agents would be dependent upon the severity of her initial exposure and the damage caused by it, and stated that he did not know the extent or severity of that initial or subsequent exposure. Both Drs. Pellegrino and Bluefarb testified that claimant must avoid exposing her skin to any offending substance.

Determination of the extent or permanency of the employee's medical disability is a question of fact, and the finding of the Commission will not be set aside unless it is against the manifest weight of the evidence. (*Interlake Steel Corp. v. Industrial Com.* (1975), 60 Ill. 2d 255, 260.) We believe the medical testimony adequately supports the Commission's finding that the claimant is suffering from a medical disability in that her skin has become permanently sensitized to various chemical compounds as the result of a work-related accident.

The finding of a permanent medical disability does not, however, resolve the question of whether an employee is totally and permanently disabled within the meaning of section 8(f) of the Workmen's Compensation Act (Ill. Rev. Stat. 1975, ch. 48, par. 138.8(f)). As noted above, the degree of the disability is dependent upon the extent to which the medical disability has impaired the employee's earning capacity or ability to work.

Evidence that the employee has been or is able to earn occasional wages or to perform certain useful services neither precludes a finding of total disability nor requires a finding of partial disability. (*E.g., Smallwood v. Industrial Com.* (1972), 53 Ill. 2d 151, 156; *Universal Bleacher Co. Service Co. v. Industrial Com.* (1969), 43 Ill. 2d 168.) For the purposes of section 8(f), a person is totally disabled

when he cannot perform any services except those for which no reasonably stable labor market exists. (*C. R. Wikel, Inc. v. Industrial Com.* (1977), 69 Ill. 2d 273, 278; *South Import Motors, Inc. v. Industrial Com.* (1972), 52 Ill. 2d 485, 489.) Conversely, if an employee is qualified for and capable of obtaining gainful employment without seriously endangering health or life, such employee is not totally and permanently disabled. *Jefferson Electric Co. v. Industrial Com.* (1976), 64 Ill. 2d 85, 92-94; *Cebulski v. Industrial Com.* (1971), 48 Ill. 2d 289; *Perry Coal Co. v. Industrial Com.* (1931), 343 Ill. 525, 529.

The focus of the Commission's analysis is on the degree to which the employee's medical disability impairs his employability. In arriving at its determination, the Commission must consider the employee's age, experience, training and capabilities. (*Consolidated Freightways, Inc. v. Industrial Com.* (1976), 64 Ill. 2d 312, 320; *Springfield Park District v. Industrial Com.* (1971), 49 Ill. 2d 67, 73.) The initial burden of proving the extent of the disability is on the employee to show that, as a result of a work-connected injury, he is unable to perform or obtain regular and continuous employment for which he is qualified. When, however, the nature or extent of the disability, coupled with the factors mentioned above, indicates that the employee cannot perform any services except those for which no reasonably stable labor market exists, the Commission may enter an award for total permanent disability despite the employee's failure to show that work was not available. *Cf. American Rivet Co. v. Industrial Com.* (1966), 34 Ill. 2d 69, 73.

When the employee has made the above showing, it is incumbent upon the employer to come forward with evidence to show not only that the employee is capable of engaging in some type of regular and continuous employment, but that such employment is reasonably available. (2 A. Larson, Workmen's Compensa-

tion sec. 57.61, at 10—136 to 10—137.) Placing this burden on the employer is justified in that it is much easier for the employer, by virtue of his contact with the labor market, to prove the claimant's employability than it is for the employee to attempt to prove the universal negative of being totally unemployable. This burden of proof is somewhat similar to that borne by the employer who files a petition seeking to modify an award pursuant to section 8(f) (Ill. Rev. Stat. 1975, ch. 48, par. 138.8(f)). *Perry Coal Co. v. Industrial Com.* (1931), 343 Ill. 525; *Superior Coal Co. v. Industrial Com.* (1926)', 321 Ill. 240.

The parties have not cited nor has our research revealed any Illinois decision pertaining to an award for total permanent disability as a result of an employee's susceptibility to dermatitis. A review of cases from other jurisdictions indicates that the result reached depended, in each instance, upon whether the court found the individual capable of performing or obtaining other suitable employment for which he was qualified without endangering his health.

A case comparable to that presented here was decided by the Supreme Court of Louisiana in *Lewis v. St. Charles Parish Hospital Service District* (La. 1976), 337 So. 2d 1137. There, the plaintiff, a 25-year-old black woman, was employed as a maid in the housekeeping department of the defendant hospital. Her duties involved regular exposure to a detergent germicide containing phenol compounds. As a result of this exposure, the backs and palms of her hands suffered extensive loss of pigment. The medical testimony indicated that due to the permanently sensitized condition of her hands, the claimant was unable to be employed in work involving exposure to phenol compounds or to sunlight. The record further indicated that phenol compounds are a component in most common household disinfectants and in almost all detergents and disinfectants which are widely used for routine cleaning in commercial

and industrial establishments. The defendant listed various alternative occupations, but there was no evidence that the claimant was capable of performing these jobs without endangering her health. In reinstating the trial court's award of compensation, which had been reversed by an appellate court, the Louisiana Supreme Court held that the trial court properly took into account the fact that the locality's employment opportunities for an untrained black woman were limited to housekeeping and service occupations. It also noted that the disfigurement suffered by the claimant would further impair the chances of her finding suitable employment. Finding the claimant to be, for all practical purposes, unemployable as the result of her disability, the court affirmed the trial court's award of total permanent disability compensation. See also *Charleston v. Veri-Fresh Poultry Co.* (La. App. 1973), 273 So. 2d 712, 716.

In the instant case, the 58-year-old claimant is precluded by her disability from returning to domestic service, her only earlier work experience. It can be inferred from her work history that she has no other skills or training to draw upon. Although we recognize that there may be certain types of work which the claimant could perform without endangering her health, under the circumstances of this case it was incumbent upon the respondent to prove not only what jobs these might be but, more importantly, that such jobs were reasonably available to a person in claimant's position. Under the facts, we believe the Commission could find that there existed no reasonably stable market in which claimant could be employed.

Accordingly, the judgment of the circuit court is reversed and the award is reinstated.

*Judgment reversed; award reinstated.*

MR. JUSTICE RYAN, dissenting:

I have no quarrel with the general proposition of law

announced by the majority, *i.e.*, that a person is totally disabled for purposes of section 8(f) when he cannot perform any services except those for which no reasonably stable market exists. However, I disagree with the majority's ultimate conclusion that the claimant in this case has offered a sufficient quantum of evidence to support a finding that she is, in fact, totally disabled within the context of section 8(f). Accordingly, I must respectfully dissent from the result reached by the majority today.

The evidence adduced both on arbitration and on review reveals the following facts. The claimant is suffering from general dermatitis that will remain cured or at least under control so long as she does not expose herself to solutions such as detergents and cleaning fluids. In this regard, the claimant testified that her allergic condition only flares up when she comes into contact with these types of toxic irritants. Further, the claimant, after being advised not to return to E. R. Moore Company, sought employment at only two other places, a garment factory and a bookbindery. For reasons not clear in the record, she did not secure employment at either place.

Given these pertinent facts, I cannot assent to the majority's finding that the claimant is totally disabled within the meaning of section 8(f). There is no proof that the claimant is unable to return to work. In fact, the evidence shows that she is free to perform just about any type of menial or light labor, as long as she stays away from the toxic skin irritants which could trigger her allergy. Even giving due consideration to the claimant's age, experience, training and ability, the evidence does not show that her opportunities for employment in such a diverse and large labor market as exists in the Cook County area can be considered so bleak as to permit the conclusion that she is unable to perform any services for which a stable labor market exists.

To justify such a conclusion, I believe the claimant

must come forward with more evidence than that which she has proffered in this case. The evidence she has presented, that is, that she was not "called back" by the two factories at which she sought employment, proves little. First, there is no indication whether these factories had any openings for employment, or that the claimant was refused employment for any reason relating to her age, experience, training, or ability. Moreover, given the large number of factories and business establishments at which the claimant could seek and possibly find work, it would seem that two applications for employment provide little convincing evidence to support a finding of permanent disability.

The case on which the majority relies to sanction a finding of permanent disability "despite the employee's failure to show that work was not available," *American Rivet Co. v. Industrial Com.* (1966), 34 Ill. 2d 69, is inapposite to the case at hand. In *American Rivet,* the claimant, whose work experience had been limited to employment as a machine operator, was prevented from continuing in that line of work or any similar type, when an injury caused him to have headaches, dizziness, blurred vision, and blackouts. Also, because of a chronic leg condition, he was prevented from performing any type of a desk job. He was an immigrant with only one year of formal education, and he had difficulty with the English language. Consequently, because of the severe limitations concerning the claimant's opportunity for any type of employment, it was concluded that the evidence sustained the finding of total and permanent disability. In the instant case, however, no such severe handicap exists as to the claimant. She is a relatively healthy individual, albeit of advanced years. Unlike the claimant in *American Rivet,* I do not think she should be exempted from the traditional burden of proving that she cannot perform any services except those for which no reasonably stable

market exists.

*Lewis v. St. Charles Parish Hospital Service District* (La. 1976), 337 So. 2d 1137, the case upon which the majority relies to justify an award for total disability as a result of an employee's susceptibility to dermatitis, is unpersuasive authority to sustain such an award to the claimant in the instant case. In *Lewis,* there was much more than a mere susceptibility to an allergic condition. The claimant in *Lewis* suffered severe discoloration of her hands which resulted in their appearing disfigured and diseased. The court specifically noted that the unsightly appearance of the claimant's hands greatly narrowed her employment opportunities. Also, the *Lewis* court noted that, as a result of certain demographic factors, there was virtually no market for the claimant's services in the area in which she sought employment. (*Lewis v. St. Charles Parish Hospital Service District* (La. 1976), 337 So. 2d 1137, 1140.) Moreover, three justices of the Louisiana Supreme Court dissented from the majority holding and felt that susceptibility to allergy, even coupled with the physical appearance of the claimant's hands, is not enough to support a finding of permanent disability.

The claimant here has not come forward with enough evidence, medical or otherwise, to sustain a finding of permanent disability. The shifting of the burden of proof to the employer, which the majority espouses, comes about only after the employee has established that her condition is such that she is unable to perform any services for which there is a reasonably stable market. Professor Larson stated that the employee must *prima facie* prove that she falls in an "odd-lot" category. That is, that only irregular or unpredictable, as distinguished from steady or continuous, employment can be performed by, or is available to, the employee. In such cases, Professor Larson states, the burden then shifts to the employer to show that some kind of suitable work is regularly and continuously

available. (2 A. Larson, Workmen's Compensation secs. 57.51, 57.61.) The employee in our case, by proving that she has a dermatitis that flares up on exposure to certain irritants, and that she applied for work at two factories in a job market area as diversified as Cook County, has not established the *prima facie* showing envisaged by Professor Larson.

MR. JUSTICE UNDERWOOD joins in this dissent.