NO. 1-95-4387WC

 IN THE
 APPELLATE COURT OF ILLINOIS
 FIRST DISTRICT
 INDUSTRIAL COMMISSION DIVISION


STEVE FOLEY CADILLAC/HANLEY DAWSON, ) Appeal from
 Appellant, ) Circuit Court
v. ) Cook County
THE INDUSTRIAL COMMISSION, et al. ) No. 95L50228
(GENNIE MOBLEY, Appellee) )
 ) Honorable
 ) Alexander White,
 ) Judge Presiding.



JUSTICE RARICK delivered the opinion of the court:
 Claimant, Gennie Mobley, sought benefits pursuant to the
Workers' Compensation Act (Act) (Ill. Rev. Stat. 1987, ch. 48,
par. 138.1 et seq.) for injuries relating to a stroke which
occurred on March 15, 1987, after a "heated" argument at work.
The arbitrator awarded both temporary total disability and
permanent partial disability benefits. On review the Industrial
Commission (Commission) modified the arbitrator's determination
to award claimant permanent total disability benefits. The
circuit court of Cook County confirmed the decision of the
Commission. Employer, Steve Foley Cadillac/Hanley Dawson,
appeals contending that the finding of claimant's condition of
ill-being being causally related to his employment is against the
manifest weight of the evidence and that claimant is not entitled
to permanent total disability benefits when claimant is retired,
already working part-time and failed to show a diligent attempt
to obtain alternative employment. We affirm.

 In 1985, claimant, a new and used car salesman, retired
after working eleven years for employer. In 1986, however,
claimant returned to work on a part-time basis at employer's
request to help handle certain former customers of claimant. On
March 15, 1987, claimant, then aged 63, arrived at work at
approximately 7:45 a.m. to meet a customer who needed some
repairs performed on his auto. The car was to be finished by
early afternoon, but at 4 p.m., claimant discovered the customer
was still waiting for his car. Claimant approached the service
manager and, according to claimant, a heated argument ensued. 
The argument, consisting of shouting and cursing, lasted between
five and ten minutes and was eventually broken up by another
manager. Upon claimant's return to the showroom, one of the
salesmen noted claimant was wobbling and offered to drive him
home. Claimant refused and attempted to drive himself home. On
the way, claimant realized his vision was deteriorating. He
rested at home that evening but became progressively worse. The
next day claimant fell in the bathroom and was unable to get up
by himself. While claimant did not feel anything hurting, his
wife noticed his mouth was twisted and his speech was
deteriorating. Claimant was taken to the hospital for treatment. 
The hospital diagnosis was left pontine infarction with right
hemiparesis and speech impairment. Claimant required extensive
medical care and still remains under medical treatment. He now
walks with a cane and has impairment on his right side. Claimant
did not return to work for employer, and, in fact, employer has
gone out of business. Claimant does, however, work a few hours a
month as a "closer" on an "on-call" basis for a different
dealership. Claimant began working as a closer for the new
dealership in 1989.
 The service manager with whom claimant allegedly argued
testified he had a good relationship with claimant and did not
recall any heated argument in March 1987. The manager who
allegedly broke up the argument also denied any knowledge of the
verbal altercation. The customer who was waiting to get his car
repaired, however, stated an argument did occur between claimant
and the service manager. He left before the argument concluded
because he became too uncomfortable listening.
 Dr. Nathaniel Greenberg, claimant's examining
physician, opined claimant suffered a stroke which was causally
related to the March 15 argument. According to the doctor,
claimant initially sustained a transient stroke on the left side
which resolved itself and then experienced a stroke on the right
side. The doctor believed claimant did not experience two events
but suffered from an ongoing process which began during the
argument. Dr. Greenberg specifically found impairment of speech,
weakness on the right side, and mild facial paralysis. He did
not believe claimant was capable of employment in light of his
impairments and difficulty walking even with assistance. 
Employer's expert, on the other hand, believed claimant suffered
three ischemic events with the first two resolving themselves
without any negative residual effects. The third event, from
which claimant now suffers, was not related in any way to his
work activities or the alleged "heated" argument according to
employer's expert. The doctor opined claimant's condition of
ill-being was simply a progression of disease in his arterial
system.
 Prior to March 15, 1987, claimant had no history of
strokes or heart attacks and had been in good health with the
exception of a minor high blood pressure condition. Claimant
also testified he never smoked and virtually never drank and
there is no history of heart attacks or strokes in his family.
 It is the function of the Industrial Commission to
decide questions of fact and causation, to judge the credibility
of witnesses and to resolve conflicting medical evidence. Lasley
Construction Co. v. Industrial Comm'n, 274 Ill. App. 3d 890, 893,
655 N.E.2d 5, 7 (5th Dist. 1995). Merely because different
inferences could be drawn from conflicting evidence does not
justify a reviewing court overturning the decision of the
Commission. Berry v. Industrial Comm'n, 99 Ill. 2d 401, 407, 459
N.E.2d 963, 966 (1984); Lasley Construction, 274 Ill. App. 3d at
893, 655 N.E.2d at 8. Only if the findings of the Commission are
against the manifest weight of the evidence, will the decision be
reversed. See Mendota Township High School v. Industrial Comm'n,
243 Ill. App. 3d 834, 837, 612 N.E.2d 77, 78 (4th Dist. 1993). 
And, in order for a finding to be contrary to the manifest weight
of the evidence, an opposite conclusion must be clearly apparent. 
Caterpillar, Inc. v. Industrial Comm'n, 228 Ill. App. 3d 288,
291, 591 N.E.2d 894, 896 (3d Dist. 1992). In this instance, we
cannot say an opposite conclusion is clearly apparent.
 Prior to the altercation with the service manager on
March 15, 1987, claimant generally was in good health. 
Immediately after the altercation, claimant began experiencing
symptoms of wobbling and weakness. Claimant continued to
experience problems over the next 36 hours ultimately resulting
in a trip to the hospital where he was diagnosed as having
suffered a stroke. Claimant's expert opined the stroke began
after the argument and, in fact, was caused by it. While
employer's expert found no causal connection between the
confrontation and the stroke, he did admit the argument could
result in rising blood pressure. Claimant's expert, on the other
hand, pointed out that claimant had none of the usual risk
factors associated with heart attacks and strokes. He did not
smoke or drink and had no personal or family history of heart
attacks or strokes. While claimant apparently had a mild high
blood pressure condition, one month prior to the incident, his
blood pressure was within normal limits. More importantly,
claimant's expert specifically testified claimant's preexisting
condition was not of sufficient magnitude to cause any particular
imparity prior to the onset of the altercation and illness. As
noted many times, a preexisting condition does not preclude a
finding of compensability (see Sears, Roebuck & Co. v. Industrial
Comm'n, 79 Ill. 2d 59, 66, 402 N.E.2d 231, 235 (1980), nor must a
claimant prove some act or phase of his employment was the sole,
or even the principal, cause of his injury (see Lasley
Construction, 274 Ill. App. 3d at 893, 625 N.E.2d at 8). Clearly
claimant proved his case. It was then for the Commission to
choose between the expert medical opinions. And, in the presence
of conflicting medical opinion, the Commission's determination is
to be given substantial deference. Material Service Corp. v.
Industrial Comm'n, 97 Ill. 2d 382, 387, 454 N.E.2d 655, 657
(1983). Under the circumstances presented here, we must uphold
the decision of the Commission.
 Employer also finds fault with the Commission's award
of permanent total disability when claimant is employed on a
part-time basis. Relying on Smith v. Industrial Comm'n, 125 Ill.
App. 3d 999, 466 N.E.2d 1001 (1st Dist. 1984), employer argues
proof of total and permanent disability requires evidence that
the claimant is unable to perform services except for those for
which there is no reasonably stable market. As claimant was
working, employer contends claimant failed to show he was unable
to make some contribution to the work force sufficient to justify
payment of wages. Employer further points out claimant is now a
73 year old retired person and therefore is not actively in the
work force in any event. The record reveals otherwise. Contrary
to employer's contention, claimant is not a retired person and
certainly was not retired at the time of the incident on March
15, 1987. Claimant did retire in 1985, but was called out of
retirement by employer and was successfully performing his job
until the confrontation and resulting stroke. Since the stroke,
claimant works only two to three days a month and only a few
hours per day on an "on-call" basis. In the six months preceding
his stroke, claimant earned approximately $42,260 compared to
some $15,300 over the four years since his stroke. To this day,
claimant continues under the care of his personal physician and
remains under medication. He walks with a cane and has permanent
weakness on his right side. He also has had to retrofit his home
to accommodate his disabilities. The fact he can earn occasional
wages or perform certain useful services does not preclude a
finding of total permanent disability. See E.R. Moore Co. v.
Industrial Comm'n, 71 Ill. 2d 353, 361, 376 N.E.2d 206, 209
(1978). Dr. Greenberg expressed his opinion that claimant was
not capable of working given his physical limitations and
difficulties. The determination of the extent or permanency of a
claimant's medical disability is a question of fact for the
Commission. E.R. Moore Co., 71 Ill. 2d at 361, 376 N.E.2d at
209; Zion-Benton Township High School District 126 v. Industrial
Comm'n, 242 Ill. App. 3d 109, 115, 609 N.E.2d 974, 979 (2d Dist.
1993). Here the Commission determined claimant was permanently
and totally disabled. Such determination is supported by the
record and will not be overturned on appeal.
 AFFIRMED.
 McCULLOUGH, P.J., COLWELL, and HOLDRIDGE, JJ., concur.