(No. 49742.-

THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS, Appellee, v. THE INDUSTRIAL COMMISSION *et al.*—(Clifton Hill, Appellant.)

*Opinion filed April 3, 1978.*

288

Warren E. Danz, of Peoria, for appellant.

James J. Costello, Timothy O. Madigan, and Warren H. Glockner, of Urbana, for appellee.

MR. JUSTICE RYAN delivered the opinion of the court:

Claimant, Clifton Hill, filed a claim with the Industrial Commission pursuant to section 19(h) of the Workmen's Compensation Act (Ill. Rev. Stat. 1973, ch. 48, par. 138.19(h)), alleging an increase in the disability that had formed the basis of a previous award. The Commission found that Hill's disability had increased to the extent of 60% loss of use of his right leg and 15% loss of the use of his left leg. The Commission also allowed Hill's claim for accrued medical expenses. The circuit court of Champaign County reversed the Commission's decision in its entirety. This appeal followed.

Hill was employed as a construction laborer for the University of Illinois. On September 7, 1973, while on the job mixing concrete, he felt a hard pinch in his lower back as he lifted a sack of rocks. He immediately began to experience pain in his legs, and he felt numbness in both feet. This condition persisted throughout the remainder of the day, and the next morning he sought treatment at the Carle Medical Clinic. He was referred to the university hospital, where he was placed under the care of Dr. Marion Kinzie. Hill received treatment from Dr. Kinzie as an outpatient, but his condition failed to improve. He was referred to Dr. James Nauman, an orthopedic specialist, who treated Hill with physical therapy and medication until mid-October 1973, at which time Hill attempted to return to work. This proved unsuccessful, and Hill returned to Dr. Nauman, who admitted him to Mercy Hospital on November 12, 1973.

Dr. Nauman recommended that a myelogram be performed on Hill in order to determine whether his problems could be the result of disc disease. However, according to Dr. Nauman's testimony adduced at the arbitration hearing, the results of the myelogram were diagnostically without value because of extra injection of the dye used in the test. Based on his previous evaluation and diagnosis, Dr. Nauman concluded that Hill's problems

were not caused by disc disease, and because of possible complications with repeat myelograms did not recommend another such test. Rather, he continued to prescribe a conservative mode of treatment for Hill, consisting primarily of rest and medication. Hill did not satisfactorily respond to such treatment, however, and he was referred by Dr. Nauman to Dr. Robert Mussey, an orthopedic specialist at the Carle Clinic.

Dr. Mussey first saw Hill on June 18, 1974. He treated him with a back support and medication, and also prescribed gymnastic therapy. Dr. Mussey did not make any objective findings as to the precise cause of Hill's problems, and did not feel that Hill's problems were serious enough in nature to require further medical treatment. He suggested that Hill find a lighter type of work, and released him from his care on August 18, 1974.

On September 18, 1974, Hill began working at the Ramada Inn, where he performed assorted maintenance tasks. During his third day on the job, he experienced a painful pinch in his back while moving furniture. He sought emergency treatment at the Carle Clinic and was seen by the attending physician, who ordered him to stay home from work for a few days and rest in bed.

Hill had filed a claim with the Industrial Commission on December 10, 1973, seeking compensation in addition to that which had already been paid by his employer, the University of Illinois. Hill also sought reimbursement from his employer for the payment of medical bills. The arbitration hearing took place on October 15, 1974 (after the Ramada Inn incident). All the medical testimony presented at the hearing was by way of deposition. Drs. Nauman and Mussey testified for the employer, and Dr. Horacio Rivero, an examining physician, testified for Hill. In addition to the medical testimony, Hill testified in his own behalf. The arbitrator awarded Hill compensation for 20% loss of use of his right leg, 43 weeks of lost time from

work, and additional medical expenses. Neither party appealed from the decision of the arbitrator.

Hill's condition continued to deteriorate subsequent to the arbitration hearing. In March of 1975, he sought treatment from Dr. Donald Rumer, an orthopedic specialist in Champaign. On May 26, 1975, Dr. Rumer admitted Hill to Mercy Hospital. There he performed a lumbar myelogram on Hill, which showed the existence of at least one herniated disc. On the basis of the disc disease indicated by the myelogram, Dr. Rumer performed a lumbar laminectomy, during which two herniated discs were removed from Hill's back.

On June 2, 1975, Hill filed a petition with the Industrial Commission pursuant to section 19(h) of the Workmen's Compensation Act (Ill. Rev. Stat. 1973, ch. 48, par. 138.19(h)), alleging that the disability which he had incurred as a result of the accident of September 7, 1973, had increased. Accordingly, Hill sought additional compensation and payment of the medical bills which had accrued as a result of his treatment by Dr. Rumer. As was the case at the arbitration hearing, all the medical testimony was by deposition. Dr. Rumer and Dr. Rivero, the examining physician who had testified at the arbitration hearing, testified for Hill. Dr. Kinzie, the university doctor who had treated Hill immediately after the September 7, 1973, accident, and Max Pike, supervisor of accident compensation at the University of Illinois, testified for the employer. As indicated above, the Commission awarded Hill additional compensation for an increase in disability and also allowed his claim for accrued medical expenses. Upon reversal of the Commission's decision by the circuit court of Champaign County, Hill sought direct review by this court pursuant to our Rule 302(a) (58 Ill. 2d R. 302(a)). The sole issue on appeal is whether the Commission's finding of an increase in disability and its allowance for accrued medical expenses are against the manifest weight

of the evidence.

The original finding of disability by the arbitrator was that "the injuries sustained caused the permanent and complete loss of the use of the right leg to the extent of 20% thereof." The employer argues that since the arbitrator found only an injury to the right leg the Industrial Commission, under a section 19(h) proceeding wherein an increase in disability is alleged, cannot make an award for an injury to his left leg also. The cases which the employer cites, which preclude recovery for a different injury under a section 19(h) proceeding, are not in point. The arbitrator did not find that the injury was to Hill's right leg, but found that the injury Hill received caused a disability to the right leg. All of the evidence was that the injury had been to Hill's back. The section 19(h) finding by the Industrial Commission that the injury had caused the increased disability now extending to his left leg does not constitute an award for a separate and distinct injury from that found by the arbitrator.

In a similar argument, the employer also contends that the Industrial Commission cannot now make an award under section 19(h) for a disability caused by a herniated disc because a herniated disc was ruled out on arbitration. The decision of the arbitrator did not rule out the existence of a herniated disc as the employer contends. In fact, the decision of the arbitrator makes no finding with regard to a disc injury, but, as noted above, found that Hill suffered an injury which caused the disability to his right leg. Although the medical testimony before the arbitrator generally concluded that Hill's pain and disability were due to back strain, it did not preclude the possibility of a herniated disc. Dr. Nauman, under whose direction the first myelogram was performed, stated that it was not satisfactory and was of no value in diagnosing a disc injury. He was asked to give his opinion as to whether, when he last saw Hill, he had a "protruded or herniated disc in his

back." In reply, Dr. Nauman stated:

> "I felt at that time he did not have a disc problem or a herniated disc, *at least of the degree that surgery was appropriate.*" (Emphasis added.)

This inconclusive evidence before the arbitrator concerning a disc injury could properly be considered by the Industrial Commission in light of the testimony given at the section 19(h) hearing. At that hearing, Dr. Rumer, who performed the surgery on Hill, described the conditions which he found during surgery, and testified that Hill could have been suffering from a herniated disc from the time of the original injury, regardless of the testimony of the doctors who testified to the contrary on arbitration. Furthermore, Dr. Rivero, who testified on arbitration that Hill's problems were caused by back strain, testified at the section 19(h) hearing before the Commission that the herniated disc could have been caused by the rock-lifting incident on September 7, 1973.

This testimony is competent evidence on the question of whether Hill's disability had increased since the time of the hearing, and is not evidence which was contrary to the previous finding of the arbitrator. Consequently, it was proper to consider the medical evidence elicited before the Commission to the effect that the herniated disc existed from the time of the initial accident, and to weigh that testimony against that of the doctors who testified to the contrary at the arbitration hearing.

We do not agree with the employer that the hypothetical question put to Dr. Rivero was improper and without probative value because it failed to include the relevant facts of the Ramada Inn incident of October 1973, or of an incident that occurred in Hill's garden in May 1975. A disputed issue raised by the section 19(h) proceeding was whether these two incidents were factually and causally connected to Hill's disability or whether they were painful episodes which followed from the injury that

Hill had suffered on September 7, 1973. Because the factual significance of these incidents was disputed, they were properly excluded from the hypothetical, since it would be unreasonable to require Hill's counsel to include in his question every painful episode that Hill experienced. The employer, who disputed Hill's contention that these episodes were not causally connected to Hill's back condition, had the prerogative to include his version of the facts upon cross-examination of Dr. Rivero, or to present them in a hypothetical question put to his own witness. (*Sanitary District v. Industrial Com.* (1931), 343 Ill. 236, 243; see McCormick, Evidence sec. 14, at 34 (2d ed. 1972).) He chose the latter strategy. The result is a conflict in medical testimony that focused on the two episodes and their possible causal connection to Hill's disability. As we have repeatedly declared, where the evidence is conflicting, or of such a nature that different inferences may be reasonably drawn therefrom, we will not disregard permissible inferences drawn by the Commission merely because it or we might have drawn other inferences from the facts. (*Meade v. Industrial Com.* (1971), 48 Ill. 2d 215.) We think that the hypothetical question put to Dr. Rivero was proper, and that the Commission finding was premised on reasonable inferences drawn from this and other testimony elicited during the proceeding.

The question whether an increase in disability has occurred is one of fact and not of law. (*Franklin County Mining Co. v. Industrial Com.* (1926), 323 Ill. 98.) The resolution of factual disputes is squarely within the province of the Commission, and its determination should not be disturbed unless against the manifest weight of the evidence. (*Barricks Corp. v. Industrial Com.* (1969), 44 Ill. 2d 9.) In arriving at the factual determination of whether an increase in disability has occurred, the Commission must examine the entire record (*Belleville Brick & Title Co. v. Industrial Com.* (1922), 305 Ill. 577), and this court

must, in turn, review the entire record to ascertain whether the Commission's decision is against the manifest weight of the evidence (*United States Steel Corp. v. Industrial Com.* (1966), 35 Ill. 2d 506). We have examined all the evidence in this case, and we think the Commission's finding of an increase in disability is supported by competent evidence and is not against its manifest weight. The circuit court order reversing that portion of the Commission's decision must accordingly be reversed.

However, we can find no evidence in the record to support the decision of the Commission that the employer should be responsible for the payment of medical bills for the services of Dr. Rumer. Pursuant to the statute in effect when the services were rendered, an employee could "secure his own physician, surgeon and hospital services at his own expense." (Ill. Rev. Stat. 1973, ch. 48, par. 138.8(a).) While there is no argument that Dr. Rumer was Hill's private physician, Hill nevertheless maintains that the university should be responsible for the medical bills because he was referred to Dr. Rumer by the university, at least by implication. The record does not support this contention. Dr. Kinzie is the only university doctor to have examined Hill. Dr. Kinzie referred Hill to Dr. Nauman, who, in turn, referred him to Dr. Mussey. We can find no referral connection whatever between these doctors and Dr. Rumer. Rather, Hill saw Dr. Rumer on his own initiative. Hill clearly stated this on cross-examination during the section 19(h) proceeding. There is no evidence that the university was aware that Hill required further medical treatment at the time he first saw Dr. Rumer, nor did the university refuse him medical treatment at any time during this period. In fact, according to testimony given at the section 19(h) proceeding by Max Pike, a university employee, continuing medical services were offered Hill at the university hospital. Hill knew about this and had taken advantage of this service in the past. The

fact that he did not return in March of 1975 can only be interpreted as his choice to secure his own physician. For these reasons, Hill should be responsible for these medical bills. The portion of the circuit court order disallowing the claim for accrued medical expenses is affirmed. The fact that the statute has since been amended to provide that the employee may elect to secure his own physician, etc., "at the employer's expense" (Ill. Rev. Stat. 1975, ch. 48, par. 138.8(a)) does not alter our conclusion. The effective date of this amendment was July 1, 1975. The disputed medical expenses were all incurred before that date, and Hill does not urge that amended section 8(a) applies.

The judgment of the circuit court of Champaign County is affirmed with respect to its disallowance of the payment of medical expenses. The judgment is reversed insofar as it set aside the award for increased disability. The cause is remanded to the Industrial Commission with directions to enter an award in accordance with the views expressed herein.

*Affirmed in part and reversed in part*
*and remanded, with directions.*