(No. 5050

HEALTH & HOSPITALS GOVERNING COMMISSION OF COOK COUNTY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.*—(Ella B. Johnson, Appellee.)

*Opinion filed September 19, 1978.*

William P. Tuggle, Joan M. Pucillo, Robert C. Samko, and Gail D. Hasbrouck, of Chicago, for appellant.

Ella B. Johnson, of Markham, *pro se*.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

In proceedings under the Workmen's Compensation Act (Ill. Rev. Stat. 1973, ch. 48, pars. 138.1 to 138.28), an arbitrator for the Industrial Commission found that claimant, Ella B. Johnson, was disabled as a result of two separate accidents sustained while she was employed by respondent, Health and Hospitals Governing Commission

of Cook County, doing business as Oak Forest Hospital. The arbitrator awarded her compensation for medical expenses incurred following her accident on January 2, 1975, temporary total disability payments for the same accident until July 7, 1975, and permanent partial disability payments following her accident of August 31, 1975. On review, the Industrial Commission affirmed the arbitrator's decision in part, with a slight modification as to permanent partial disability payments. The Commission's decision ordered payment of $1,993 in medical expenses, $124.30 per week for 26 3/7 weeks for temporary total incapacity, and $96.90 per week for 47 weeks for 20% loss of use of the right arm. On *certiorari* the circuit court of Cook County confirmed the decision of the Industrial Commission, and respondent appealed to this court pursuant to Rule 302(a)(2) (58 Ill. 2d R. 302(a)(2)). Respondent contends that the judgment must be reversed or in the alternative that the award of the Industrial Commission be modified for the reason that it is against the manifest weight of the evidence and not in accordance with provisions of the Act.

On January 2, 1975, claimant was employed as a nurse at Oak Forest Hospital (Oak Forest). While walking outside of the side entrance of the hospital, claimant slipped on some ice and fell backwards, landing on her back, and hitting her right arm. She went to the emergency room, where her right arm was bandaged, and she was told to return the next day. She returned to the hospital the next day for X rays of her lower back and right wrist. A few days later, complaining of pain in her back, legs and arms, she again returned to Oak Forest and saw Dr. Pasquale M. Garramone, in charge of the emergency room, who prescribed certain medication, placed her right wrist in a sling, advised bed rest, and told her to return if the pain persisted. Claimant testified that approximately two days thereafter she telephoned Dr. Garramone and

requested physical therapy treatment, but such treatment was refused. Claimant further testified that it was not until after January 22, 1975, when her attorney filed a written demand for medical treatment, that she began to receive physical therapy treatment from Oak Forest. Two more written demands were subsequently filed by claimant's attorney.

Following her accident, claimant sought private care from Dr. Boguslaw A. Herse, a general practitioner, and received treatment from him beginning on January 10 and continuing to the end of March 1975. The therapy consisted of ultrasonic heat treatments, hot packs, back rubs, and exercise programs twice a week to relieve her lower back pain and the pain in her legs and right wrist.

Respondent denied refusing claimant the requested physical therapy treatment and asserted that it never instructed her to seek outside medical care. It claims that commencing with January 9, 1975, and continuing until the end of February, Oak Forest provided claimant with physical therapy treatments three times a week. During this time, it appears that she was under the care of orthopedic surgeons and a doctor specializing in physical medicine. Respondent claims that claimant needed constant supervision while undergoing treatment at Oak Forest since she would not cooperate with the physical therapist and refused to attend appointments for psychiatric consultations made for her by respondent.

Claimant continued receiving treatment from Dr. Herse at the same time that she was receiving medical care from Oak Forest. She testified that after January 22 the therapy that she received from Oak Forest doctors was similar to that received from Dr. Herse. Claimant, however, complained of the therapist who had been administering to her at Oak Forest, and, consequently, a different therapist was substituted. Claimant further complained that personnel of Oak Forest, in administering physical therapy

treatments after January 22, mistreated her and burned her with the ultrasonic heat treatments on numerous occasions.

In the beginning of March 1975 respondent advised claimant that its doctors had concluded from medical tests that she could return to work. Instead of doing so, claimant returned to Dr. Herse, who hospitalized her at South Suburban Hospital from March 6 to March 11, 1975, for the continued pain in her back and legs. At that time she was placed in 15-pound pelvic traction and given physical therapy treatments which included ultrasonic heat, whirlpool baths, back rubs, and pain and muscle-relaxant medication. She fell during her stay at South Suburban Hospital, injuring her neck and back. She wrote a letter to respondent, requesting medical leave of absence commencing on April 11, 1975, for a condition, she stated, which was unrelated to an on-duty injury. She also sought the care of new physicians, Dr. A.M. San Jose, a general practitioner, and Dr. Alex B. White, a specialist in neurology. Dr. San Jose treated claimant for back and accompanying leg pain with a back brace, muscle relaxants and pain pills. Dr. White provided treatment for her head, neck and accompanying arm pain with a cervical collar, cervical traction, muscle relaxants and pain pills. On May 11, 1975, Dr. San Jose hospitalized claimant in Ingalls Memorial Hospital. She received treatments for pain in her head, neck, right arm, legs and back. She was released from Ingalls on May 18, 1975, but remained under doctor's care until she returned to work on July 7, 1975. Even though claimant continued to experience a dull pain in her legs and back, she was able to perform her assigned duties during the time from July 7 to August 31, 1975.

Claimant's second accident at Oak Forest occurred on August 31, 1975, at approximately 12:30 a.m. While pushing a medication cart up a ramp, a defective wheel caused claimant to lose control. Attempting to regain

control, she experienced a sharp pain in her back which radiated into her legs. Claimant testified that she went directly to the emergency room, where she saw a doctor. She was told to go home and return the next day for X rays, at which time X rays were taken of the lower back.

A few days later she returned to a doctor at Oak Forest for pain and muscle-relaxant medication and was informed that Oak Forest had made an appointment for her to be examined by Dr. Howard W. Schneider, an orthopedic surgeon. Prior to her appointment with Dr. Schneider, claimant, on the recommendation of a fellow employee, chose to see Dr. Jose Songco, a general practitioner. Dr. Songco prescribed physical therapy treatment twice a week for claimant, as well as pain and muscle-relaxant medication. On November 25, 1975, claimant was examined by Dr. Dimitrios G. Sereleas, substituting for Dr. Schneider, and was hospitalized in Ingalls Memorial Hospital. Dr. Sereleas prescribed a back brace, pain and muscle-relaxant medication, 15-pound pelvic traction, therapy treatment, and bed rest. He discharged claimant on December 3, 1975, and, as the record indicates, no objective findings were recorded during this hospital stay.

Claimant testified that, upon her discharge from Ingalls, Dr. Sereleas advised her to consult another physician for a second opinion since he could no longer do anything more for her condition. Respondent denied this allegation and further asserted that claimant was uncooperative, that she did not return to see Dr. Sereleas after her hospitalization, and that she failed to appear for three scheduled appointments. Claimant, on the other hand, stated that she did not keep one appointment with Dr. Sereleas because she did not like the way that he was treating her and, in fact, she was looking for another doctor. She further stated that she was unaware of any other appointments with Dr. Sereleas after December 9,

1975, although she stated on cross-examination that she could have conceivably telephoned him January 13, 1976, to tell him that she could not keep an appointment.

In January 1976 claimant sought medical treatment from Dr. Paul Ashley, a general practitioner, and remained under his care until August 1976. Dr. Ashley administered cortisone injections for claimant's back pain, and prescribed pain pills, muscle-relaxant medication, and physical therapy treatment which included ultrasonic heat, back rubs and deep heat treatments. On June 9, 1976, claimant received a certificate from Dr. Ashley indicating that she was able to return to work and perform light duties. On June 17, claimant took the certificate to Dr. Garramone at Oak Forest. She testified that he read it, but said that she could not return to work because she was on restricted duty which precluded heavy lifting, that there was no light duty work to assign to her, and that she should go home.

Claimant continued under Dr. Ashley's care until shortly before August 24, 1976, when she was advised that she could return to her regular work duties. On August 24, she stated that she presented another certificate from Dr. Ashley to Dr. Garramone of Oak Forest which indicated that she could return to regular work duties. At that time Dr. Garramone gave claimant a complete physical examination, including blood, urine, sensitivity and X-ray tests. Later that day, Dr. Garramone told her that Dr. Lawrence Krain, chairman of community medicine at Oak Forest, would have to authorize her return to work, and an appointment was scheduled for claimant to see him. Claimant asserts, however, that she was continually refused an appointment with Dr. Krain to discuss her return to work. Dr. Krain testified, however, that he met with claimant on August 31, 1976, and told her that it was routine that she submit to a complete physical and psychological examination. When claimant refused, Dr. Krain said that Oak Forest would be willing to accept any

physical evaluation from a private doctor of her own choice as long as the report also included an examination of her mental state. Claimant's response allegedly was that she was not going to be "told what to do" and that she intended to talk to her attorney about the matter. Dr. Krain testified that he told claimant that she could return to work if she would take a physical examination, but since she threatened litigation, that he could not deal with her directly. He said that he would consult with the county attorney and abide by his advice.

Claimant further testified that she still suffers from pain in her lower back, legs, right arm and wrist, that the back and leg pain is amplified when she is on her feet for any long period of time, and that pain results even when she sits for too long. Claimant stated that, as a result, her ability to do housework has diminished and that, as a student at Governors State University, she experiences difficulty attending classes.

The Commission resolved conflicts in the testimony in favor of claimant, and its findings were not disturbed by the circuit court. We do not disturb the Commission's findings unless contrary to the manifest weight of the evidence. (*Hiram Walker & Sons v. Industrial Com.* (1978), 71 Ill. 2d 476, 479.) Permissible inferences will not be set aside merely because we would reach a different conclusion. *Board of Trustees v. Industrial Com.* (1978), 71 Ill. 2d 287, 295.

The first issue for review is whether claimant is entitled to $1,993 for medical expenses that she incurred following her January 2, 1975, accident. This amount does not include the cost of treatment provided by Oak Forest.

The claimant's entitlement to reimbursement is governed, as are other issues to be resolved, by the law in effect at the time of the injury. (*Sroka v. Industrial Com.* (1952), 412 Ill. 126, 131.) The parties are in dispute as to what that law is.

Prior to a 1975 amendment of the Act, section 8(a) (Ill. Rev. Stat. 1973, ch. 48, par. 138.8(a)) read in part as follows:

> "The employer shall provide the necessary first aid, medical and surgical services, and all necessary medical, surgical and hospital services thereafter, limited, however, to that which is reasonably required to cure or relieve from the effects of the accidental injury.
>
> The employee may elect to secure his own physician, surgeon and hospital services at his own expense."

The 1975 amendment, however, relieves the employee of the expense of securing his own medical services. The section as amended provides in part (Ill. Rev. Stat. 1975, ch. 48, par. 138.8(a)):

> "The employer shall provide and pay for all the necessary first aid, medical and surgical services, and all necessary medical, surgical and hospital services thereafter incurred, limited, however, to that which is reasonably required to cure or relieve from the effects of the accidental injury. \*\*\*
>
> The employee may at any time elect to secure his own physician, surgeon and hospital services at the employer's expense \*\*\*."

The effective date of the amendment, however, was July 1, 1975. Claimant's right to reimbursement is therefore to be determined under the law as it reads without the amendment. Even so, we believe that claimant is entitled to reimbursement.

Under the law as it stands without the amendment, an employee may recover medical expenses for personally obtained services if the treatment is necessary and the employer was aware of such treatment. (*Bell & Gossett Co. v. Industrial Com.* (1972), 53 Ill. 2d 144, 150-51; *Barricks Corp. v. Industrial Com.* (1969), 44 Ill. 2d 9, 14; *Quaker Oats Co. v. Industrial Com.* (1953), 414 Ill. 326, 338.) The employee must make a claim upon the employer for medical services, and the claim must be sufficient to

apprise the employer of the employee's desire for treatment and to allow the employer the opportunity to provide such treatment. (*Barricks Corp. v. Industrial Com.* (1969), 44 Ill. 2d 9, 14; *American Distilling Co. v. Industrial Com.* (1968), 40 Ill. 2d 350, 352.) Where the employee justifiably concludes that the employer has disclaimed responsibility for medical care and seeks treatment elsewhere, that will not be deemed a decision to "elect to secure his own physician, surgeon and hospital services at his own expense" (Ill. Rev. Stat. 1973, ch. 48, par. 138.8(a)) within the meaning of the Act. *Barricks Corp. v. Industrial Com.* (1969), 44 Ill. 2d 9, 14; *Jewel Tea Co. v. Industrial Com.* (1968), 39 Ill. 2d 180, 183-84.

If the testimony of the claimant is to be believed, it could reasonably be found that respondent had not fully and adequately assumed responsibility for claimant's care. In this regard we note claimant's testimony suggesting that she received unsatisfactory treatment from Oak Forest and that she even suffered physical abuse at the hands of respondent's personnel. Claimant's version of events was accepted by the Commission, and it affirmed the arbitrator's award of reimbursement for medical expenses. No reason appears as to why that ruling should be disturbed, and we do not do so inasmuch as credibility of witnesses is to be determined by the Commission (*Jewel Tea Co. v. Industrial Com.* (1968), 39 Ill. 2d 180, 184).

The second issue to be resolved is whether claimant is entitled under section 8(b) of the Act (Ill. Rev. Stat. 1973, ch. 48, par. 138.8(b)) to compensation for temporary total disability payments from the time that respondent contends that she was able to work until her return to work on July 7, 1975. Payments of $124.30 per week for 26 3/7 weeks were awarded. Payments accruing during the last four months of the period are at issue.

"Within the meaning of the compensation act, temporary total disability exists from the time an injury

incapacitates an employee for work until such time as he is as far recovered or restored as the character of the injury will permit." (*Arbuckle v. Industrial Com.* (1965), 32 Ill. 2d 581, 586.) The employee must prove not only that he did not work, but also that he was unable to do so. (*Arbuckle v. Industrial Com.* (1965), 32 Ill. 2d 581, 586; *Lehigh Stone Co. v. Industrial Com.* (1925), 315 Ill. 431, 436.) Evidence introduced by the parties below revealed conflicting medical opinions as to whether claimant was capable of returning to work. The Commission is in the best position to resolve conflicts in the evidence, and we will not set aside its findings if based on reasonable inferences. (*Board of Trustees v. Industrial Com.* (1978), 71 Ill. 2d 287, 295.) We cannot say that the record does not support the Commission's determination, and therefore will not disturb its findings. We note especially that claimant was under doctor's care and was twice hospitalized after respondent informed her that she could return to work.

Finally, we address the issue of permanent disability payments under section 8(e) (Ill. Rev. Stat. 1973, ch. 48, par. 138.8(e)) of $96.90 per week for 47 weeks for 20% loss of use of claimant's right arm. Respondent argues that the Commission's decision is not substantiated, is contrary to the manifest weight of the evidence, and is excessive.

Evidence introduced by claimant showed that she injured her right arm in the accident of January 2, 1975, that it was bandaged, X-rayed and treated, and that claimant still experiences pain and difficulty in manipulating the arm. The Commission found that claimant suffered a 20% loss of use of the arm on the basis of this evidence, and respondent has presented no sound arguments as to why that finding should be set aside. We cannot say that claimant's claim is not substantiated or that it is contrary to the manifest weight of the evidence.

Nor can we say that the award is excessive. The award

complies with the formula of section 8(e)(10) (Ill. Rev. Stat. 1973, ch. 48, par. 138.8(e)(10)) of the Act and does not appear to be unreasonable in light of the evidence introduced.

Although claimant testified that she still experiences pain in her back and legs also, no finding of additional permanent disability was made by the Commission. On appeal, claimant has not raised any issue relating to the Commission's decision in this regard.

For the foregoing reasons the judgment of the circuit court is affirmed.

*Judgment affirmed.*