(No. 49860.–

SUZANNAH SZABO, Appellant, v. THE INDUSTRIAL COMMISSION *et al.*—(Parkway Bank and Trust Co., Appellee.)

*Opinion filed November 22, 1978.*

Perz & McGuire, of Chicago (Frank M. Perz and James M. Ridge, of counsel), for appellant.

Kane, Doy & Harrington, of Chicago (Arthur O. Kane and John S. Hayes, of counsel), for appellee.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

An arbitrator for the Industrial Commission awarded the claimant, Suzannah Szabo, compensation for 64 weeks of temporary total disability, 50% permanent loss of use of the right leg and $2,826.93 of medical expenses unpaid by the respondent employer, Parkway Bank and Trust Co. The Commission, after hearing additional testimony, affirmed the awards for temporary total disability and medical expenses, but disallowed the award for 50% permanent loss of use of the right leg. The circuit court of Cook County confirmed the Commission's decision. The claimant has appealed, alleging that the Commission's finding of no permanent disability was against the manifest weight of the evidence and the law and that she is entitled to compensation for permanent total disability. She further assigns as error the Commission's failure to award her certain medical expenses.

The claimant was 42 years old at the time of the

accident. It is undisputed that an injury arose out of and in the course of her employment by respondent. At the hearing before the arbitrator, claimant testified that on December 28, 1972, she was working as head teller at the bank. Her job included lifting bags of coins and distributing them to the tellers. On the morning in question claimant was lifting a bag containing $900 in loose quarters when she felt a sharp pain originating in her lower back and running down the back of her right leg. Later in the day the pain extended to the right heel and around to the great toe. Despite increasing pain radiating upwards and downwards from the lower back, she continued to work until January 12, 1973. At that time a vice president at the bank told her to call her own doctor, Dr. Michel. She later came under the care of Dr. Varzino, an orthopedic surgeon, and Dr. Cascino, a neurosurgeon.

Claimant testified that she was admitted to Mother Cabrini Hospital in February 1973 and spent almost three weeks in traction. She was transferred to Loyola Hospital, where she remained for three to four weeks, receiving medication, injections, ultrasound and shortwave therapy and whirlpool treatments. She then received outpatient therapy for two months at Resurrection Hospital. In July 1973, she returned to work on Dr. Varzino's advice, but left after four days because an air conditioner was making her pain worse. In December 1973, Dr. Varzino prescribed a steel back brace. In January 1974, Dr. Cascino had her admitted to St. Anne's Hospital for gastrointestinal bleeding caused by taking large quantities of aspirin for her pain. She continued to see Dr. Cascino throughout 1974. She was also examined by Dr. Scuderi at the request of her employer's insurance company.

Claimant testified at the hearing that she still experienced severe pain in the lower back running down the right leg to the foot and that the great toe and the top of the foot were numb. She testified that she could not

engage in sexual relations and that she could not walk without a limp.

Dr. Cascino, a neurosurgeon, testified that he first examined the claimant on February 28, 1973. He diagnosed her condition as a low back syndrome with radicular involvement on the right side. During 1973 and 1974, two myelograms and three electromyograms were performed on the claimant; none of these tests revealed abnormalities. Dr. Cascino testified that the "myelograms rule out surgical intervention involving her complaints. The EMG ruled out direct nerve involvement." In March 1973, Dr. Bumlik, head of the neurology department at Loyola Hospital, found no evidence of disc disease and diagnosed claimant's condition as sacroiliac ligament strain on the right side. Dr. Cascino testified that he continued to see the patient throughout 1973 and 1974, during which her complaints and his findings remained essentially the same, except that in May 1973 he felt that the patient was improving.

On the basis of his findings over the two-year period Dr. Cascino made the following diagnosis at the hearing:

> "Number one, that the patient has a chronic low
> back strain; number two, the patient has a right
> sacroiliac strain; number three, the patient has a
> hypertrophic gastritis secondary to the ingestion
> of aspirin; and, number four, that in my opinion
> this patient has a neurosis or a hysteria."

The witness explained that some of the patient's manifestations could not be explained on an organic basis and that he attributed them to a neurosis or hysteria traceable to the accident. In response to hypothetical questions, Dr. Cascino testified that because the patient was still incapacitated her condition could be permanent and that she was not capable of performing work involving walking, sitting or bending. On cross-examination the witness testified that

he had found no atrophy of the patient's muscles, such as might be expected in a patient who had lost the use of an extremity because of a neurosis. He did not rule out the possibility that a psychological syndrome common in middle age played some part in the patient's mental condition. Dr. Cascino also testified that at some periods during 1973 the patient had walked with a normal gait and that some form of work commensurate with her abilities would be good for her neurosis. He stated further that he did not believe she was malingering.

The report of Dr. Scuderi was received into evidence. The report diagnosed claimant's condition as low back strain "resulting in considerable functional overlay." Dr. Scuderi noted that it was 16 months since the injury and the patient's condition had become stationary. He also noted the negative findings in the neurological examination and the absence of gross atrophy of either leg.

At the hearing before the Commission to review the arbitrator's decision, the claimant testified and also introduced into evidence the report of an examination by Dr. Busch, made since the earlier hearing. Claimant testified that since the date of the hearing before the arbitrator she had been receiving treatment from the Gonstead Chiropractic Clinic in Mt. Horeb, Wisconsin. She admitted on cross-examination that she had not notified respondent in advance about visiting the clinic. Claimant introduced bills from the clinic and a bill for the earlier treatment of the gastrointestinal bleeding, which she stated had not been available at the time of the prior hearing.

Dr. Busch's report stated that his examination revealed bilateral lumbosacral and paravertebral tenderness and spasm on palpation and pressure, spasm radiating into both sides and down posterior aspect of right thigh, increased spasm on motion extremes with stiffness and resistance to motion and some atrophy of musculature of

right thigh and right calf. Dr. Busch found that claimant was still unable to return to work and in need of treatment.

The major issue before us is the extent of disability. Whether a claimant is permanently disabled is a question of fact peculiarly within the purview of the Industrial Commission, and this court will not set aside the Commission's finding unless it is contrary to the manifest weight of the evidence. (*South Import Motors, Inc. v. Industrial Com.* (1972), 52 Ill. 2d 485, 489; *Cebulski v. Industrial Com.* (1971), 48 Ill. 2d 289, 294.) Here the evidence most favorable to the claimant indicated that she suffered from a chronic low back strain and continuing pain in her back and right leg. Dr. Cascino testified that this condition could be permanent. The evidence most favorable to respondent, also from Dr. Cascino's testimony, indicated that there was no organic basis for the claimant's complaints; furthermore, there was no atrophy of the muscles, which might have been expected in a patient suffering loss of use of a limb because of a traumatic neurosis. The report of Dr. Busch, on the other hand, did find atrophy of the muscles of the right leg. In addition, respondent's contention is that the death of claimant's son in 1973 and the marriage of her daughter in 1974 reduced or eliminated her need or incentive to return to work.

Where the evidence is conflicting, or of such a nature that different inferences may reasonably be drawn therefrom, we will not disregard permissible inferences drawn by the Commission merely because it or we might have drawn other inferences from the facts. (*Board of Trustees v. Industrial Com.* (1978), 71 Ill. 2d 287, 295; *Meade v. Industrial Com.* (1971), 48 Ill. 2d 215, 219-20.) We concur with the finding of the circuit court that the claimant's credibility as a witness primarily was a question for the Commission and that there was enough evidence of the claimant's neurosis to cause the Commission to consider

her testimony very closely. Accordingly, we hold that the Commission's finding of no permanent disability was not against the manifest weight of the evidence.

Likewise, the Commission's failure to award claimant compensation for the medical expenses that she incurred at the Gonstead Clinic was proper. Pursuant to a statute in effect when the services were rendered, an employee could "secure his own physician, surgeon and hospital services at his own expense." (Ill. Rev. Stat. 1973, ch. 48, par. 138.8(a).) Here claimant was being treated by Dr. Cascino with the authorization of her employer and its insurance carrier, and her decision to seek treatment at the Gonstead Clinic without notice to her employer must be regarded as her election under the statute.

The case is otherwise, however, with regard to the expenses that claimant incurred during her two hospitalizations for gastrointestinal bleeding early in 1974. Dr. Cascino testified that the gastric condition was caused by the ingestion of large amounts of aspirin, and the claimant testified that she was taking this aspirin on account of the pain caused by the injury. Having allowed the claimant temporary total disability compensation for the period during which she was hospitalized, it was inconsistent for the Industrial Commission not to allow in addition medical expenses incurred during hospitalization and incidental to the injury. *Quick v. Industrial Com.* (1972), 53 Ill. 2d 46, 49.

Accordingly, the judgment of the circuit court of Cook County is affirmed in part and reversed in part and the cause is remanded to the Industrial Commission with directions to enter an award in accordance with this opinion.

*Affirmed in part and reversed*
*in part and remanded,*
*with directions.*