INTERNATIONAL HARVESTER COMPANY, Appellant, v. THE INDUS-TRIAL COMMISSION *et al.* (Dan Hildreth, Appellee).

Third District (Industrial Commission Division)   No. 3—87—0616WC

Opinion filed May 16, 1988.

John C. McAndrews and Brian S. Nelson, both of Katz, McAndrews, Durkee, Balch & Lefstein, P.C., of Rock Island, for appellant.

Harrison H. Kavensky, of Winstein, Kavensky, Wallace & Doughty, of Rock Island, for appellee.

JUSTICE CALVO delivered the opinion of the court:

Pursuant to the Workers' Compensation Act (Ill. Rev. Stat. 1981, ch. 48, par. 138.1 *et seq.*), arbitrator William M. Kelley found that claimant, Dan Hildreth, sustained injuries to his lower back arising out of and during the course of his employment with International Harvester Company. As a result, the arbitrator found that claimant sustained permanent disability to the extent of 31% of a body as a whole. Claimant subsequently filed a petition before the Industrial Commission (the Commission) seeking additional compensation on the basis that claimant's disability had materially increased. (Ill. Rev. Stat. 1983, ch. 48, par. 138.19(h); *Motor Wheel Corp. v. Industrial*

*Comm'n* (1979), 75 Ill. 2d 230, 236, 388 N.E.2d 380, 382.) After reviewing additional evidence presented by both parties, the Commission found that claimant's permanent disability had increased to the extent of 60% of a body as a whole. The trial court confirmed the Commission's findings, and the employer appeals to this court. The sole issue is whether the Commission's decision increasing claimant's permanent disability to 60% of a body as a whole was against the manifest weight of the evidence.

Claimant injured his back while working on an assembly line for the employer on October 16, 1981. Claimant subsequently underwent a laminectomy, performed by Doctor William D. Reinwein, an orthopedic surgeon. Reinwein stated in his January 4, 1983, report: "[Claimant] was returned to light duty on May 10, 1982, and gradually to full work, although I have stressed to him the weight lifting should be permanently restricted at 40 [pounds]." Reinwein also stated that claimant's back problems and resulting surgery were causally related to the work accident. Doctor F. Dale Wilson examined claimant on November 11, 1982, and also found a causal connection between claimant's work accident and subsequent disability. Wilson advised claimant to restrict his bending and twisting and to stay under a 50-pound weight-lifting limit. Claimant returned to work in June of 1982, and he was working at the time of the arbitration hearing on March 8, 1983. Claimant's job involved working on a Swayze machine, which required bending and heavy lifting. Claimant testified that, contrary to Reinwein's recommendation, he was working without any restrictions because he did not want to lose his job.

On March 9, 1983, Reinwein examined and took X rays of claimant. Reinwein testified that he observed a considerable amount of change in claimant's back where the surgery was performed. Reinwein recommended that claimant not lift over 25 pounds, but that he could occasionally lift 50 pounds. Reinwein also advised claimant to wear a back brace. Claimant continued to work until March 18, 1983, when the plant was shut down. Claimant testified that on June 14, 1983, he reinjured himself while working at home. He was treated by Reinwein at the Moline Public Hospital from June 14, 1983, until June 20, 1983, for acute lumbo-sacral sprain. Reinwein testified that the sprain was a result of a flare-up of claimant's condition brought on by the work-related injury and was not a result of claimant's activity at home. Wilson concurred with Reinwein's opinion. On June 24, 1983, Reinwein released claimant to return to work on June 30, 1983, and restricted claimant's weight lifting to 50 pounds. Also on June 24, 1983, the employer's physician, Dr. H. T. Kutsunis, examined claim-

ant. Kutsunis released claimant for work on that day with a weight-lifting restriction of 40 pounds and a recommendation that claimant avoid excessive bending and stooping. Claimant did not return to work, however, because the plant was still shut down. The plant reopened on August 1, 1983, but the testimony revealed that claimant did not return to work because he was still undergoing treatment for the June 1983 sprain. Claimant entered the hospital from August 31, 1983, until September 5, 1983, for treatment of another acute lumbosacral sprain.

On September 15, 1983, Reinwein took a CT scan of claimant which revealed a "considerable amount of changes in the canal, stenotic changes, mainly manifested as spurring due to instability at some levels." In Reinwein's opinion, this change was a normal reaction to the loss of the discs in claimant's back. Reinwein released claimant to return to work on October 31, 1983, and advised claimant not to lift over 25 pounds and to avoid continuous bending or stooping. On October 24, 1983, Kutsunis concurred with Reinwein's restriction. On November 2, 1983, claimant presented Kutsunis with a note from Reinwein recommending a change in the weight-lifting restrictions from 25 pounds to 50 pounds. Because claimant still complained of pain, and because claimant's physical examination did not reveal any changes since October 24, 1983, Kutsunis recommended no change in the restrictions. On January 25, 1984, Reinwein advised claimant that he could occasionally lift up to 50 pounds and that he should wear a back brace.

Although claimant was released for work in October of 1983, the employer did not call claimant back to work, because of his restrictions and seniority, until April 9, 1984. At that time, claimant's duties involved driving a sweeper. On June 1, 1984, claimant was bumped from that job and assigned an assembly line job making feeder gears which required lifting the 33-pound gears. The employer later took claimant off that job because the work was too heavy. The employer then assigned claimant to drive a forklift until his layoff, due to seniority, on August 31, 1984. Claimant testified that he has since applied for other jobs in Illinois and California, and has disclosed his weight restrictions to the prospective employers, but has not received a job offer.

Claimant testified that his physical condition remained unchanged after the arbitration hearing. The employer initially argues that this was a judicial admission. Therefore, the Commission's finding that claimant's condition worsened after the hearing was improper. Claimant acknowledges that he testified that his physical condition had not

814

changed. The parties disagree, however, on the interpretation of the law regarding judicial admissions as it applies to the case at bar.

■ Judicial admissions are binding upon the party making them and may not be contradicted. (*Trapkus v. Edstrom's, Inc.* (1986), 140 Ill. App. 3d 720, 722, 489 N.E.2d 340, 343.) They thus differ from ordinary evidentiary admissions which may be controverted or explained. (*Trapkus*, 140 Ill. App. 3d at 722, 489 N.E.2d at 343.) Testimony of a party may be binding on him or her as a judicial admission, if the matter testified to is within the party's personal knowledge, without reasonable chance of mistake, and if the admission is clear and unequivocal. (*Trapkus*, 140 Ill. App. 3d at 723, 489 N.E.2d at 343.) Furthermore, "[s]uch an admission must be given meaning consistent with its context and considered in relation to the testimony of other witnesses and their opportunity to observe the facts testified to. [Citation.] Otherwise, the result is to penalize honest mistake and confusion." *Trapkus*, 140 Ill. App. 3d at 723, 489 N.E.2d at 343.

■ The employer argues that claimant's condition of well-being is within his personal knowledge. Although a claimant is in the best position to know how he or she feels, doctors or medical experts are in a better position to know the actual physical condition of a claimant. Thus, claimant's testimony as to the change in his physical condition is not within his personal knowledge. The employer argues that claimant's testimony is consistent with the medical testimony and it is consistent with the evidence that claimant's restrictions changed very little, if at all, after arbitration. Claimant testified before the Commission, however, that he had not worked for approximately one year, so he did not have an adequate opportunity to test his physical well-being. Moreover, the record discloses that the doctors placed claimant on greater weight-lifting restrictions after arbitration. Also, Wilson stated that claimant's condition deteriorated after arbitration. Considering claimant's testimony in relation to these latter circumstances, in addition to the fact that claimant testified to a matter not within his personal knowledge, claimant's testimony was not a judicial admission. The employer is correct, however, that claimant's testimony, as an evidentiary admission, may be considered and weighed in the context of the other evidence presented at the hearing.

■ ■ The employer's second contention is that the medical evidence proved that claimant's condition had not changed. The employer points out, and claimant acknowledges, that Reinwein testified that claimant's condition "remained essentially the same" since March 9, 1983. Claimant notes, however, that Reinwein testified that X rays and a CT scan taken after arbitration revealed a considerable amount

of change in the discs where the previous surgery was done. Reinwein also stated that claimant's lumbo-sacral sprains after arbitration were related to the work accident.

Wilson examined claimant in 1982 and 1984. In Wilson's opinion, claimant's condition "gradually worsened" between the two examinations. Wilson testified that claimant lost some range of motion in flexion, and that claimant's lateral motion and rotation also decreased. Wilson testified further that claimant's X rays and the CT scan revealed increasing degenerative changes. Wilson noted further that claimant had lost sensation over the right foot since the 1982 examination. Wilson indicated that claimant suffered from a permanent, continuing, degenerating condition related to his injury at work. Finally, Wilson stated that claimant's sprains and hospitalizations subsequent to arbitration were related to his work accident.

Dr. Duane A. Willander, an orthopedic surgeon called to testify on behalf of the employer, disagreed with Wilson's diagnosis. Willander examined claimant on February 15, 1983, and November 2, 1983. He stated that claimant's residual disability between the examinations remained "essentially the same." Willander stated that on the basis of the first examination claimant "would only be able to work in a limited capacity," and that "claimant could not resume his former occupation." Willander testified that based on his second examination of claimant, he would not have recommended increasing the restrictions on claimant's activities.

It is the province of the Commission to resolve any conflicts in medical evidence and to decide which testimony to accept. (*McLean Trucking Co. v. Industrial Comm'n* (1978), 72 Ill. 2d 350, 357, 381 N.E.2d 245, 248.) The employer argues that Wilson's testimony lacks credibility because he compared X rays taken prior to arbitration with a CT scan taken after arbitration. The employer states that an adequate comparison cannot be made when the tests compared are substantively different. The employer cites no medical or expert evidence to support its proposition that those two types of tests cannot be compared. In addition, Wilson based his opinion not only on the X rays and CT scan, but also on his examinations of claimant both before and after arbitration. Thus, although the Commission could take Wilson's procedure into account, that procedure would not be a basis for disregarding Wilson's opinion altogether. Consequently, the Commission could have properly chosen to accept the testimony of Wilson over that of Reinwein and Willander.

■ The employer's final argument is that the Commission erred in finding that claimant's weight-lifting restrictions changed after ar-

bitration. Contrary to the employer's contention, claimant's restrictions increased following arbitration. Prior to arbitration, claimant testified that he was not on any lifting restrictions. Reinwein's January 4, 1983, report reveals that he advised claimant to permanently restrict lifting to 40 pounds. Claimant testified that he did not follow the recommendation because he did not want to lose his job. Wilson stated in his report of November 18, 1982, that claimant should not lift over 50 pounds.

On March 9, 1983, the day after arbitration, however, Reinwein changed the limitation to 25 pounds with an occasional allowance of 50 pounds. He also advised claimant to wear a back brace. When Reinwein released claimant for work in June of 1983, Reinwein only restricted claimant to a weight-lifting limit of 50 pounds. Kutsunis recommended a 40-pound limit. Reinwein reimposed the 25-pound limit in October of 1983. On November 2, 1983, Kutsunis refused to increase the restriction from 25 pounds to 50 pounds, as Reinwein recommended, because Kutsunis felt that claimant's condition had not changed. Therefore, claimant's post-arbitration restrictions were more severe, even in light of his prearbitration restriction of 40 pounds. Furthermore, Reinwein testified that the reason he changed the restriction to 50 pounds after October of 1983 was because claimant complained that he could not find work with the 25-pound limit. Reinwein emphasized, however, that he only allowed claimant to *occasionally* lift 50 pounds. Reinwein testified that he felt 50 pounds was not a reasonable limit for claimant, and he told claimant that if he becomes symptomatic he should stop lifting over 25 pounds. Moreover, Reinwein instructed claimant to wear a back brace.

The employer places great emphasis on the fact that "in March of 1983" Reinwein restricted claimant to a 25-pound weight-lifting limit, with an occasional limit of 50 pounds. The employer stresses that this is the same restriction Reinwein placed on claimant in October of 1983 and January of 1984. The employer's argument is misleading, however, because Reinwein's earlier restriction was imposed on March 9, 1983, the day *after* the arbitration hearing. Therefore, the stricter weight-lifting limit was not imposed until after arbitration.

■ Claimant points to his employment history to bolster his position that his disability increased, and he cites *United States Steel Corp. v. Industrial Comm'n* (1985), 133 Ill. App. 3d 811, 478 N.E.2d 1108, for support. In *United States Steel*, claimant became partially disabled when he sustained an injury to his hand. The condition of claimant's hand subsequently worsened after the arbitration award. Claimant was employed at the time of the award, but did not return

to work after his condition worsened. The appellate court noted that medical testimony established that claimant could not work at all because of his subsequent condition. The court thus affirmed the Commission's decision that claimant's disability increased after arbitration. (*United States Steel*, 133 Ill. App. 3d at 817, 478 N.E.2d at 1113.) Claimant cites *United States Steel* for the proposition that employability is a factor to be considered when determining whether an award should be increased.

The employer rightly argues, however, that the correct standard is not whether claimant's employability has changed, but whether claimant's *disability* has changed (Ill. Rev. Stat. 1983, ch. 38, par. 138.19(h)), and medical evidence is the best way to determine this. The court in *United States Steel* did not base its opinion on the fact that claimant was not working, but on medical testimony which established that claimant's subsequent relapse resulted in his unemployment. Claimant's employment history, however, can be used as additional evidence to reveal the change in and extent of claimant's physical capabilities. (See *United States Steel Corp. v. Industrial Comm'n* (1966), 35 Ill. 2d 506, 510-11, 221 N.E.2d 258, 260-61.) Although in the case at bar the record revealed that claimant had a more difficult time obtaining a job after imposition of the 25-pound restriction, there was also evidence that claimant was laid off from various jobs with the employer because of plant shutdowns and his seniority. Nevertheless, claimant had difficulty lifting over 25 pounds, and the 25-pound restriction prohibited him from engaging in the heavy work which he had performed prior to arbitration.

■ Under section 19(h) (Ill. Rev. Stat. 1983, ch. 48, par. 138.19(h)), either party may petition the Commission for a review of the award on the ground "that the disability of the [claimant] has subsequently recurred, increased, diminished or ended." The change in claimant's condition must be material. (*Motor Wheel Corp.*, 75 Ill. 2d at 236, 388 N.E.2d at 382.) Whether an increase in disability has occurred is a factual question, and it is the Commission's duty to resolve factual disputes. (*Board of Trustees v. Industrial Comm'n* (1978), 71 Ill. 2d 287, 295, 375 N.E.2d 107, 111.) A reviewing court will not disturb the Commission's decision unless that decision is against the manifest weight of the evidence. *Board of Trustees*, 71 Ill. 2d at 295, 375 N.E.2d at 111.

■ The employer argues that even if claimant's restrictions changed, the restrictions only changed slightly. In addition, the employer contends, the Commission placed undue emphasis on the restrictions, especially in light of claimant's testimony and the testi-

mony of claimant's treating physician, Reinwein, that claimant's condition had not changed. Therefore, according to the employer, there was no material change in claimant's disability. We find, however, that other evidence provided a substantial foundation for the Commission's decision. (*Keystone Steel & Wire Co. v. Industrial Comm'n* (1978), 73 Ill. 2d 269, 272, 383 N.E.2d 216, 218.) Claimant's restrictions changed from a 40-pound limit to a 25-pound limit with a back brace. Both Reinwein and the employer's physician, Kutsunis, imposed this restriction. Moreover, Wilson testified that claimant's condition deteriorated, contrary to Reinwein's and Willander's opinions. Claimant also suffered two injuries subsequent to arbitration which both Reinwein and Wilson felt were not a result of an intervening occurrence, but were manifestations of claimant's underlying condition caused by the 1981 work injury. Finally, since the imposition of the 25-pound restriction, claimant found it more difficult to obtain employment. Consequently, the Commission's decision that claimant's disability materially increased to 60% of a body as a whole was not against the manifest weight of the evidence.

Accordingly, the Rock Island circuit court's decision confirming the Industrial Commission is affirmed.

Affirmed.

BARRY, P.J., and McCULLOUGH, McNAMARA, and WOODWARD, JJ., concur.